460 S.E.2d 692

**In re CHRISTINA L. and Kenneth J.L.**

**Nos. 22803, 22804.**

Supreme Court of Appeals of
West Virginia.

Submitted May 30, 1995.

Decided July 11, 1995.

Jeffrey A. Elder, Albright, Bradley & Ellison, Parkersburg, guardian ad litem for Kenneth J.L.

C. Scott Durig, Asst. Pros. Atty. for Wood County, Parkersburg, for W.V. Dept. of Health and Human Resources.

Barbara H. Allen, Allen & Allen, Charleston, for Bonita L.

Ernest M. Douglass, Douglass, Douglass & Douglass, Parkersburg, guardian ad litem for Christina L.

CLECKLEY, Justice:

In this child abuse and neglect case, the Circuit Court of Wood County terminated the parental rights of Bonita L.[1] to her children, Christina L. and Kenneth J.L., and authorized their adoption. The parental termination was based on evidence that Bonita L.'s live-in boyfriend, James R., sexually abused Christina L. for many years. Furthermore, Bonita L. knew of such abuse and aided James R. in performing some of the acts. Bonita L. and the guardian ad litem for Kenneth J.L. join in this appeal[2] and cite as error: (1) the circuit court's refusal to allow the mother's counsel and the guardian ad litem for the children the opportunity to submit their proposed dispositional alternatives; and (2) the authorization for the children's adoption since the children's father is not a respondent to the proceedings. Bonita L. raises an additional assignment of error that her parental rights should not be terminated because she had no knowledge the abuse was occurring.[3] For reasons discussed below, we remand this case to the circuit court for action consistent with this opinion.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Bonita L. and Paul David L. are the natural parents of Christina L., who was born October 9, 1981, and Kenneth J.L., who was born January 12, 1983. Mr. and Mrs. L. divorced shortly after Kenneth's birth, and

Bonita L. was awarded custody of the children. Christina and Kenneth have had very little contact with their natural father since the divorce. Bonita L. has lived as husband and wife with her boyfriend, James R., for more than a decade. The children refer to James R. as their father.

The investigation into this matter began after twelve-year-old Christina told a friend at school and a teacher that James R. had sexual contact with her. The evidence shows the sexual abuse began at approximately the time Christina was in the third grade and continued to the time it was reported. She stated James R. touched her breasts, vagina, and anus with his hands and penis. Furthermore, he attempted to penetrate her vagina and anus with his penis. Christina testified the abuse usually occurred in her parents' bedroom in the middle of the night or before school began.

Karol Payne, a child protective services worker with the West Virginia Department of Health and Human Resources (Department), testified at the November 10, 1993, hearing that Christina told her that her mother knew the abuse was occurring because Bonita L. would sometimes hold her arms and tell her to be quiet. Christina testified that Bonita L. would tell her to hold still and not to "squirm." Christina also stated that Bonita L. and James R., on occasion, took Polaroid pictures of these sex acts.

Based on this evidence, the circuit court ordered the removal of Christina and Kenneth from their home. Temporary custody was vested in the Department.

Dr. Joan Phillips, a pediatrician, performed an examination on Christina at the Sexual Assault Clinic of Women and Children's Hospital in Charleston. Dr. Phillips

1. We follow our past practice in domestic and juvenile cases which involve sensitive facts and do not utilize the last names of the parties. *See State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987); *W. Va. Dep't of Human Servs. v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. Both Bonita L. and the guardian ad litem for Kenneth petitioned for appeal following the circuit court's decision. The appeals were consolidated. While the brief of Bonita L. appears on

its face to have been submitted jointly, the guardian ad litem failed to sign the brief and failed to appear before this Court. It is ironic that one assignment of error revolves around the circuit court's refusal to accord the guardian ad litem an independent role in the proceedings when he failed to exercise that role on appeal.

3. Bonita L. does not appeal the circuit court's decision to terminate her parental rights to Christina.

testified at the February 25, 1994, hearing that her findings supported Christina's disclosure of sexual abuse. Upon examination, she noticed a notch in the vagina indicative of a penetration-type forced trauma. Dr. Phillips described the old injury as

> "an indentation or V-ed area into the tissue of the hymen. That is significant in that it was deep which would indicate that it had perhaps been a healed tear. It was also at the 8:00 position. We look at the vaginal opening as we would a clock from 12:00 all of the way around. Any notch between the 3:00 and 9:00 position is strongly indicative of trauma or healed trauma."

Dr. Phillips stated a straddle-type injury would not produce this result. Furthermore, it was highly unlikely the injury was caused by masturbation or tampon use.

Bonita L. and James R. vehemently denied any sexual abuse occurred. They speculated that Christina conjured up this story because she was jealous of the attention James R. began paying to his grandson. Furthermore, James R. stated that Christina's allegations were physically impossible because medical problems had prevented him from maintaining an erection for approximately three years. However, no medical evidence was submitted to support his claim.

Kenneth testified he was never sexually abused and no evidence was submitted to show he was abused or exposed to Christina's abuse. He testified he wanted to return to his mother's custody.[4] Kenneth also testified his mother and other family members did not believe Christina and put pressure on her to rescind the allegations.

By order entered May 23, 1994, the circuit court found by clear and convincing evidence that Christina was sexually abused by James R. and that her mother failed to protect her from the abuse even though she was aware that the abuse occurred. No findings were made in regard to Kenneth. The matter was set for a dispositional hearing.

At the dispositional hearing held May 31, 1994, Cynthia Beck, a psychologist, testified that she had conducted therapy for both Christina and Kenneth on a weekly basis for over a five-month period. Ms. Beck stated she originally diagnosed Christina as having a post-traumatic stress disorder. Christina had made progress in decreasing her anxiety level and was doing well in foster care. She recommended that Christina not return to her mother's custody because James R. was still in the home and Bonita L. never acknowledged the abuse occurred. Ms. Beck testified that it made Christina very angry and frustrated that her mother did not support her.

Ms. Beck diagnosed Kenneth as suffering from depression, although she admitted the depression may have been due to his placement in foster care. She stated that Kenneth wavers back and forth in deciding whether he believes Christina was sexually abused. He wants to believe his parents, but he also has a close bond to Christina and does not want to conclude she is lying. During one therapy session, he remembered two incidents that led him to believe the sexual abuse allegations may have been true. When Kenneth was getting something to eat one night, he remembered seeing James R. going towards Christina's bedroom. Also, he could remember walking into the house on one occasion and encountering James R. running through the house naked. Ms. Beck recommended that Kenneth remain in foster care. She testified that research indicates whenever one child is sexually abused, other children in the home are also at risk of being sexually abused. Furthermore, Kenneth was just beginning to work through the issues of sexual abuse and Ms. Beck was afraid a return to the home would undermine his therapy.

Joan George, a child protective services worker for the Department, testified that Bonita L. never acknowledged that Christina was sexually abused by James R. and was emphatic that she did not assist him. Ms. George testified that, during a visit, Bonita L. told Kenneth, directly in front of Christina, that she did not believe Christina. Ms. George recommended that all parental rights be terminated. She testified that

---

4. There was evidence that Kenneth had been moved to two or three different homes while in foster care and was having a difficult time adjusting.

Christina would like to stay in foster care until she reaches the age of eighteen, and then she would visit her mother and not have to see James R. Ms. George stated that due to Bonita L.'s refusal to accept responsibility for what happened to Christina, she was unable to work with the mother to help solve the family's problems. Ms. George felt that both children should be permanently removed from the home.

By order entered June 21, 1994, the circuit court found no reasonable likelihood that Bonita L. would substantially correct the conditions of abuse in the near future. Accordingly, Bonita L.'s parental rights were terminated to both Christina and Kenneth. The circuit court specifically authorized the Department to consent to the adoption of both children.

Bonita L. and the guardian ad litem for Kenneth join in this appeal. Bonita L. concedes that "any attempt to reunite mother and daughter would be futile" because Christina does not want to return home. Therefore, Bonita L. does not appeal the circuit court's decision in regard to Christina.

## II.

## TERMINATION

### A. *Christina*

We first address Bonita L.'s assertion that only a "scintilla of evidence" supports the circuit court's finding that she was aware James R. was sexually abusing Christina. This assignment of error is without merit. Karol Payne testified that Christina told her Bonita L. was aware of the abuse because she was there and participated in at least some of the acts by holding Christina's arms. Furthermore, Christina testified that her mother told her not to "squirm" and to be quiet when James R. sexually abused her. There was also evidence that Bonita L. took Polaroid pictures of the incidents or was at least aware of the existence of the pictures. Using the standard reiterated in Syllabus Point 1 of *In re Jonathan Michael D.*, 194 W.Va. 20, 459 S.E.2d 131, Bonita L.'s actions constitute child abuse:

" ' "W.Va.Code, 49–1–3(a) (1984), in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse. Under this standard, termination of parental rights is usually upheld only where the parent takes no action in the face of knowledge of the abuse or actually aids or protects the abusing parent." Syl. pt. 3, *In re Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988).' Syllabus Point 2, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993)."

Furthermore, the circuit court found Bonita L. was aware the abuse was occurring and did nothing to prevent it. This Court accords deference to the findings of the circuit court and will not set aside its findings "unless clearly erroneous[.]" W.Va.R.Civ.P. 52(a). "[A] reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm '[i]f the [circuit] court's account of the evidence is plausible in light of the record viewed in its entirety[.]' " *In re Jonathan Michael D.*, 194 W.Va. at 25, 459 S.E.2d at 136, *quoting Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). The circuit court's decision to terminate Bonita L.'s parental rights to Christina is substantially supported by the record. Accordingly, we affirm that portion of the circuit court's order.

### B. *Kenneth*

Although Bonita L. does not appeal the circuit court's decision regarding Christina, the circuit court's finding of Kenneth's abuse stems from her actions in abusing Christina. No evidence was presented that Kenneth was sexually abused by James R. However, the Department alleged he was an abused child under W.Va.Code, 49–1–3(a) (1994), which states, in part:

" 'Abused child' means a child whose health or welfare is harmed or threatened by:

"(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or men-

tal or emotional injury, upon the child *or another child in the home;* or

"(2) Sexual abuse or sexual exploitation[.]" (Emphasis added).

 We find that the language of the statute is clear on its face.[5] The West Virginia Legislature plainly articulated its intention that "an 'abused child' means a child whose health or welfare is harmed or threatened by" the abuse inflicted upon "another child in the home." Under the statute, there need not be a showing by the Department that each child in the home is directly abused, either sexually or physically, before termination of parental rights is sought.

Accordingly, we hold that where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).

 We decline, however, to adopt a blanket rule that parental rights must be terminated to all the children residing in the home based merely on the finding that one child is abused. We do not believe this result was intended under the statute. Under W.Va. Code, 49–1–3(a), the Department must present clear and convincing evidence that the child's "health or welfare is harmed or threatened." Syllabus Point 1 of *In re Beth,* 192 W.Va. 656, 453 S.E.2d 639 (1994), states:

" ' "W.Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition ... by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981).' Syllabus Point 1, *West Virginia Department of Human Services v. Peggy F.,* 184 W.Va. 60, 399 S.E.2d 460 (1990)."

 Our review of the record reveals that very little reference is made by Ms. Beck and Ms. George to any potential risk that Kenneth may be harmed or threatened by James R. or Bonita L. Ms. Beck made a vague reference to some unidentified studies that she relied upon indicating that if one child in the home is sexually abused then other children in the home suffer a higher risk of being sexually abused. Ms. George was concerned that Bonita L.'s denial of the abuse charges relating to Christina would somehow affect her ability to protect Kenneth. Apart from this testimony, the Department failed to put on additional evidence directly dealing with Kenneth's well being.[6]

Moreover, the circuit court did not make a specific and independent finding of fact or conclusion of law that Kenneth either was abused or would be at risk of being abused if returned to his mother's custody. More specific findings are required in cases of this nature. Under W.Va.Code, 49–6–2(c) (1992), the circuit court is required to "make findings of fact and conclusions of law as to

---

5. In *Donley v. Bracken,* 192 W.Va. 383, 387, 452 S.E.2d 699, 703 (1994), we stated:

"If the statutory language is plain and admits of no more than one meaning, and within the constitutional authority of the law-making body which passed it, the duty of interpretation does not arise, and the rules which are to aid ambiguous language need no discussion. *State ex rel. Estes v. Egnor,* 191 W.Va. 36, 443 S.E.2d 193 (1994)[.]"

6. We agree with the circuit court that the facts of this case are most egregious. Bonita L. allowed the repeated sexual abuse of her minor daughter and did nothing to stop James R. She was aware such abuse was occurring for years and aided her boyfriend in performing some of the acts. Kenneth was living in the home when Bonita L. and James R. committed these atrocities. However, there still must be sufficient record evidence demonstrating that his "health or welfare is harmed or threatened" by the conditions existing in the home. Evidence as egregious as that in the instant case may support a finding that a parent is so deficient in the basic parental instinct to protect his or her child(ren) that termination of rights to siblings can be justified on that basis alone. However, this is an issue which the circuit court should examine and make specific findings of fact and conclusions of law.

whether such child is abused or neglected, which shall be incorporated into the order of the court." *See State v. T.C.,* 172 W.Va. 47, 303 S.E.2d 685 (1983).

 The evidence of Christina's abuse is certainly relevant and probative to the issue of Bonita L.'s capacity to protect Kenneth from any abuse should James R. begin abusing Kenneth, as the circuit court apparently feared would happen. Of particular concern to this Court is the possibility that should Kenneth be returned to the home, he may now be all the more reluctant to notify anyone should he be abused. He has experienced the ordeals of this case in which Bonita L. chose not to defend her daughter, but instead chose to defend her boyfriend even in the face of the evidence of sexual abuse. Kenneth may conclude that Bonita L. would likewise not support him should she be confronted with this issue again. In making its ultimate determination as to the disposition of Kenneth, the circuit court should take into consideration these concerns.

Because this issue was not specifically resolved below, we remand this case and direct the Department to conduct a further investigation as to any harm Kenneth may have suffered while residing with Bonita L. and James R. and the risk of being abused or further harmed if he is returned to their home. After hearing this evidence, the circuit court should make specific findings of fact and conclusions of law directly addressing the charges against Bonita L. as they relate to Kenneth. *See Kincaid v. Morgan,* 188 W.Va. 452, 425 S.E.2d 128 (1992) (this Court will remand case for further development if record has not been adequately developed).

### III.

### DISPOSITIONAL HEARING

 Bonita L. and Kenneth's guardian ad litem contend the circuit court wrongfully refused to allow them the opportunity to submit their proposed dispositional plans during the May 31, 1994, dispositional hearing. We agree. At the close of Ms. George's testimony, the circuit court ruled that the only remedy would be to terminate parental rights. The guardian ad litem interrupted and requested the court to allow him to submit his dispositional plan into the record. The circuit court refused:

> "A plan would be irrelevant. Any plan other than termination would be irrelevant so I would not allow you to encumber the record with the plan. The only plan would be where the department puts the custody of the children. So another plan would not only be irrelevant, it would be of no consequence and would encumber the record unnecessarily."

The State concedes the circuit court should have allowed counsel for Bonita L. and the guardian ad litem to present their alternative dispositional plans at the hearing. However, it claims the failure to do so is not reversible error because the circuit court was aware that the guardian ad litem would recommend returning Kenneth to the home because of Kenneth's earlier testimony. We disagree.

 There is no dispute the circuit court found the alternative plans irrelevant and prevented the guardian ad litem from submitting his proposal into the record. Two witnesses for the State, Ms. Beck and Ms. George, were the only persons to testify at the dispositional hearing. At the conclusion of their testimony, the circuit court articulated its findings without allowing counsel on either side to argue the appropriateness of their dispositional plans. There is a clear legislative directive that guardians ad litem and counsel for both sides be given an opportunity to advocate for their clients in child abuse or neglect proceedings. W.Va.Code, 49–6–5 (1992), states that the circuit court shall give "both the petitioner and respondents an opportunity to be heard" when proceeding to the disposition of the case. The essence of effective representation is an opportunity to make a summation and recommendation before the rendition of judgment in these nonjury proceedings. *See Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). This right must be understood to mean that the circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process. In

Syllabus Point 5, in part, of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), we stated:

> "Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va.Code*, 49-6-2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings.
>
> Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client."

In child abuse and neglect cases, the best interests of the child are the paramount concern. *In re Jeffrey R.L., supra.* Therefore, error of substantial proportion was committed when the guardian ad litem was not provided the opportunity to orally articulate his client's best interests. We cannot state that such constitutional error was harmless. This Court will not speculate as to what the arguments of counsel would have been or as to their potential effect on the circuit court.[7]

■ Two issues should have been addressed below by the parties. First, the record reflects that Kenneth and Christina have a close bond and wish to keep in contact with one another. At the time of the dispositional hearing, they resided in separate foster homes. The parties should have addressed what steps could be taken to preserve their sibling bond—such as visitation rights with each other. In *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991), we stated the Department and the court must make diligent efforts to promote children's continued association with one another. On remand, the circuit court should hear the parties' proposals on this issue.

■ Second, even though the circuit court decided to terminate Bonita L.'s parental rights, the lower court may still consider whether it is in Kenneth's best interest to have continued visitation with his mother. Concededly, Kenneth does not have a clear right to object to the termination of his mother's parental rights because he has not yet reached the age of fourteen.[8] However, at the time of the dispositional hearing, Kenneth was approaching eleven years of age. He had earlier stated that he loved his mother and wished to be with her. Kenneth appears to be a bright young man who miss-

---

7. We take this opportunity to state that we are troubled by the fact that the guardian ad litem for Kenneth failed to appear before this Court during the scheduled argument in this case. Clearly, it would have been to Kenneth's advantage had his attorney represented him during oral argument and been available to answer the questions of this Court. In *Matter of Scottie D.*, 185 W.Va. 191, 198, 406 S.E.2d 214, 221 (1991), we stated that guardians ad litem have the *duty* to exercise the child's appellate rights if an appeal is deemed necessary:

> "It is well established that '[a]fter judgment adverse to his ward, the guardian ad litem has the right to appeal and the duty to do so if it reasonably appears to be to the advantage of the minor[.]' *Robinson v. Gatch*, 85 Ohio App. 484, 487, 87 N.E.2d 904, 906 (1949). This is based upon the principle that a guardian *ad litem* has a duty to represent the child(ren) to whom he or she has been appointed, as effectively as if the guardian *ad litem* were in a normal lawyer-client relationship."

We note that the guardian ad litem appears to have been diligent in protecting his client's inter-

ests below. While we are unaware of the reason this particular attorney did not attend the argument, this Court is disturbed by the cavalier attitude taken by some guardians ad litem in failing to appear before this Court to represent their clients and failing to notify the Court of the reason they cannot attend. We again admonish guardians ad litem that it is their responsibility to represent their clients in every stage of the abuse and/or neglect proceedings. This duty includes appearing before this Court to represent the child during oral arguments. In fact, the guardian ad litem's role to represent the child does not cease until permanent placement of the child is achieved. Syl. pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

8. See W.Va.Code, 49-6-5(6) (1992), which states, in part: "Notwithstanding any other provision of this article, the permanent parental rights shall not be terminated if a child fourteen years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination."

es his mother very much and would be devastated at the prospect of never seeing her again. After considering the arguments of the guardian ad litem, the circuit court must determine whether Kenneth is "of an age of discretion" to object to the termination or to seek continued contact with his mother. *See* W.Va.Code, 49–6–5.

We find that when parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.[9]

On remand, the circuit court should hear arguments from both sides on this issue if it decides to terminate Bonita L.'s parental rights to Kenneth.

## IV.

### CONSENT TO ADOPT

Bonita L. and Kenneth also argue the circuit court erred in authorizing the adoption of Christina and Kenneth without including their natural father, Paul David L.,

in the proceedings. We agree. W.Va.Code, 49–6–1 (1992), sets forth specific notice requirements in abuse and neglect cases.[10]

The petition filed by the Department states "the father of the above-named children is Paul David [L.] who resides somewhere in Parkersburg, but whose exact address is currently unknown; he has had no contact with the above-named children for a number of years." Nothing in the record below indicates the Department attempted to locate the father and notify him pursuant to W.Va.Code, 49–6–1. The circuit court's order authorizing the Department to consent to the children's ˙ adoption without addressing the natural father's parental rights strips him of any parental rights without affording him due process. *See Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415; *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). *See also Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Perhaps even more importantly, it leaves the status of the children dangling, and the validity of a future adoption subject to challenge. It seems to be a general practice of the Department not to include allegations of abandonment in petitions for abuse and neglect, thus leaving the children in "No Man's Land" with regard to any resolution in their lives.

As we said in Syllabus Point 2 of *James M. v. Maynard, supra*, abandonment of a child by a parent constitutes compelling circumstances sufficient to justify the denial of an

---

9. Such post-termination visitation or other continued contact where determined to be in the best interest of the child could be ordered not as a right of the parent, but rather as a right of the child. See *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989), and *James M. v. Maynard, supra*, enunciating right of the child to continued association with those with whom he or she shares an emotional bond.

10. W.Va.Code, 49–6–1, states, in part:
 "(b) The petition and notice of the hearing shall be served upon both parents and any other custodian, giving to such parents or custodian at least ten days' notice, and notice shall be given to the state department. In cases wherein personal service within West Virginia cannot be obtained after due diligence upon any parent or other custodian, a copy of the petition and notice of the hearing shall be mailed to such person by certified mail, ad-

dressee only, return receipt requested, to the last known address of such person. If said person signs the certificate, service shall be complete and said certificate shall be filed as proof of said service with the clerk of the circuit court. If service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code. A notice of hearing shall specify the time and place of the hearing, the right to counsel of the child and parents or other custodians at every stage of the proceedings and the fact that such proceedings can result in the permanent termination of the parental rights. Failure to object to defects in the petition and notice shall not be construed as a waiver."

improvement period. Obviously, it also constitutes grounds for termination of parental rights.

■ Thus, when the Department seeks to terminate parental rights where an absent parent has abandoned the child, allegations of such abandonment should be included in the petition and every effort made to comply with the notice requirements of W.Va.Code, 49–6–1 (1992).

The failure to give reasonable notice is particularly troubling when we consider the fact that the Department believed Paul David L. also resided in Parkersburg and did nothing to notify him. We found such failure to notify reversible error in *In re Sutton,* 132 W.Va. 875, 880, 53 S.E.2d 839, 842 (1949):

> "Inasmuch as the record discloses that both parents were within the jurisdiction of the court, and that the welfare agency had knowledge of the marriage of the parents and the fact that the father recognized the child as his, we are of opinion that notice should have been given to the parents of the presentation of the petition to the juvenile court seeking the custody of the child on the ground that it was at the time a dependent and neglected child within the meaning of the statute. A parent, in our opinion, cannot be divested of parental rights without notice and opportunity for hearing."

The State argues the natural father can move to protect his rights when and if the Department finds persons to adopt the children. However, we find this argument unpersuasive. It would be ludicrous for this Court to allow this matter to linger while Christina and Kenneth are in foster care. Should they be fortunate enough to form a bond with their foster parents and the foster parents move for adoption, it would be all the more devastating to the children to have to go back into court to litigate whatever rights the natural father may possess. Dangling, unresolved parental rights also have a chilling effect on potential adoptive parents. We choose to resolve this issue in a timely manner rather than to leave this potential time-bomb unresolved. Accordingly, based on the above evidence, we find it was reversible error for the circuit court to authorize the Department to consent to the children's adoption without first giving notice to their natural father and attempting to ascertain his rights and intentions.

## V.

## CONCLUSION

Based on the foregoing, we remand this case with directions to the Department to more fully investigate the abuse charges against Bonita L. as they relate to Kenneth. The circuit court should consider this evidence along with the alternative dispositional plans of the parties and set forth specific findings of fact and conclusions of law in its order. Proper notice of these proceedings must be given to Paul David L. before the Department may be authorized to consent to the adoption of the children.

Affirmed, in part, reversed, in part, and remanded with directions.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.