# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

In Re: E.P., K.P., L.P. III., and N.P.

**FILED**

March 31, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0782 (Ohio County 11-CJA-31 through 11-CJA-34)

## MEMORANDUM DECISION

Petitioner Father, by counsel Duane Rosenlieb, appeals the Circuit Court of Ohio County's July 8, 2013, order terminating his parental rights to E.P., K.P., L.P. III., and N.P. and the August 28, 2013, order denying post-termination visitation. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("GAL"), Karen Kahle, filed a response on behalf of the children also in support of the circuit court's order. On appeal, Petitioner Father alleges that the circuit court violated his due process rights, erred in interpreting West Virginia Code § 49-6-5, erred in allowing the DHHR to amend the dispositional order, and erred in denying him post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2010, the DHHR received a referral that Petitioner Father's home was littered with animal feces and had a fly infestation. The following month, Child Protective Service ("CPS") worker Kim Ragan investigated Petitioner Father's home and confirmed that the home was in a deplorable condition. Ms. Ragan suggested that Petitioner Father thoroughly clean or replace the carpet. Thereafter, Ms. Ragan returned to Petition Father's home and noted that the home was clean, and that she did not have any additional safety concerns.

In January of 2011, the DHHR received another referral stating that the home was filled with dirty diapers, littered with animal feces, and had trash piled "chest high" in the kitchen. The referral also stated that the children were covered in dirt and unclean. Bethany Allman, a CPS worker, investigated the home and observed pet urine and feces on the carpet and dirty laundry, garbage, and food throughout the house. As a result, Ms. Allman implemented a temporary protection plan. Petitioner Father agreed to an in-home safety plan in which he agreed to clean and maintain a sanitary home and to obtain water and garbage services at his home.

In March of 2011, Petitioner Father and the children moved into the children's maternal grandparents' trailer because the electricity in Petitioner Father's home was disconnected. CPS

worker Tracey Ponsetti implemented parenting education classes and daily living skills to help Petitioner Father address the problems in his home.

On May 2, 2011, the DHHR received a referral that the maternal grandparents' trailer was littered with dog feces and urine, spoiled food, trash, and dirty silverware and bed linens. As a result of these referrals, the DHHR filed an abuse and neglect petition against Petitioner Father. The petition alleged that Petitioner Father failed to supply the children with necessary food, clothing, shelter, supervision, medical care, or education. Shortly thereafter, the DHHR filed an amended petition alleging that Petitioner Father used marijuana.

The circuit court granted Petitioner Father a ninety-day pre-adjudicatory improvement period, directing him to submit to a psychological evaluation. Following Petitioner Father's psychological evaluation, the DHHR filed a second amended petition for abuse and neglect, incorporating the psychologist's recommendation that Petitioner Father attend substance abuse classes.

After a surprise home inspection, the DHHR filed a third amended petition for abuse and neglect on May 1, 2012, which stated that Petitioner Father failed to maintain a safe and sanitary home. In response, Petitioner Father stipulated that he neglected the children by failing to provide them with a clean and safe home. By order entered on June 19, 2012, the circuit court granted Petitioner Father a six month post-adjudicatory improvement period. As part of this improvement period, Petitioner Father was directed to "provide a clean, healthy, and safe living environment" for the children and "provide a level of parenting that ensures the health, safety and well-being" of the children.

In September of 2012, the DHHR and the GAL filed a joint petition for writ of prohibition with this Court seeking to prohibit the enforcement of the circuit court's order granting Petitioner Father a six-month post-adjudicatory improvement period. Following oral argument, this Court denied the petition holding that the DHHR and the GAL failed to demonstrate that the circuit court lacked jurisdiction to grant Petitioner Father a six-month post-adjudicatory improvement period, or that the circuit court had exceeded its powers.[1]

Following two dispositional hearings, the circuit court entered its "Dispositional Order" on May 30, 2013, directing the DHHR to return the children to Petitioner Father's home under the DHHR's supervision. The circuit court also required Petitioner Father to take parenting classes and the DHHR to perform regular home visits. Following the entry of the circuit court's "Dispositional Order," the DHHR moved to clarify the "Dispositional Order" as to which party had legal custody of the children. On June 7, 2013, the circuit court entered its "Supplemental Dispositional Order" granting the DHHR legal custody of the children and physical custody to Petitioner Father.

In accordance with the circuit court's orders, the DHHR investigated Petitioner Father's home. The DHHR discovered that the water had been shut off in Petitioner Father's home for

---

[1]See *State ex rel. W.Va. Dep't of Health and Human Res. and E.P., K.P., L.P. III, and N.P. v. Sims and S.P. and L.P. Jr.*, 230 W.Va. 542, 741 S.E.2d 100 (2013).

approximately one month and that the children were again living with their maternal grandparents in violation of the circuit court's orders. Thereafter, the DHHR filed a "Motion to Modify the Dispositional Order," seeking termination of Petitioner Father's parental rights.

The circuit court held a hearing on the DHHR's motion on June 25, 2013, during which the circuit court heard testimony from four witnesses. Petitioner Father also testified on his own behalf. After considering the evidence, and the argument of counsel, the circuit court terminated Petitioner Father's parental rights. It is from this order that Petitioner Father now appeals.

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal Petitioner Father argues that: (1) the circuit court violated his due process rights when it failed to dismiss the abuse and neglect petition following the dispositional hearing because the circuit court concluded that the State failed to meet its burden of proof; (2) that the circuit court erred in interpreting West Virginia Code § 49-6-5(a)(3); and (3) the circuit court violated his due process rights by allowing the DHHR to amend the dispositional order without allowing him to present additional evidence. "A court of limited appellate jurisdiction is obliged to examine its own power to hear a particular case. . . . Therefore, this Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction." Syl. Pt. 1, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995).

Upon our review, we decline to address these arguments because this Court lacks jurisdiction. Petitioner Father's arguments specifically challenge the circuit court's "Dispositional Order" and "Supplemental Dispositional Order" entered on May 30, 2013, and June 7, 2013, respectively. Rule 11(b) of the Rules of Appellate Procedure states that Petitioner Father was required to file a notice of appeal within thirty days of entry of the judgment being appealed. Therefore, Petitioner Father was required to file a notice of appeal challenging the circuit court's "Dispositional Order" on or about June 30, 2013, and a notice of appeal challenging the circuit court's "Supplemental Dispositional Order" on or about July 7, 2013. However, Petitioner Father's notice of appeal was not filed until August 7, 2013, which is well beyond Rule 11's thirty-day requirement. However, this does not end our analysis. "[I]t is a petitioner's failure to perfect his appeal, not his failure to file a timely notice of appeal, that

deprives the Court of jurisdiction to hear an appeal." *Boardwine v. Kanawha Charleston Humane Ass'n*, No 13-0067 (W.Va. Supreme Court, Nov. 12, 2013)(memorandum decision).

Rule 11(f) of the Rules of Appellate Procedure requires that "an appeal in an abuse and neglect case must be perfected within sixty days of the date the judgment being appealed was entered in the office of the circuit clerk." Therefore, in order for this Court to have jurisdiction to review these assignments of error, Petitioner Father must have perfected his appeal on or about August 7, 2013. Petitioner Father failed to perfect his appeal on these issues within sixty days of the circuit court's entry of the "Dispositional Order" and "Supplemental Dispositional Order." The only document that Petitioner Father filed on August 7, 2013, was his notice of appeal. The Court declines to address these assignments of error because the Court lacks proper jurisdiction.

Next, Petitioner Father argues that he did not receive proper notice of the June 25, 2013, termination hearing in violation of his due process rights. With respect to this assignment of error, we note that Petitioner Father's appellate counsel concedes that counsel in the underlying matter did not object to this alleged error. Therefore, we must analyze this assignment of error under the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).[2] Moreover, a plain error must affect "the outcome of the proceedings in the circuit court . . ." in order for the error to be reversible. Syl. Pt. 9, in part, *id.*

On June 14, 2013, the DHHR filed a motion to modify the dispositional order because Petitioner Father violated the circuit court's dispositional orders. West Virginia Code § 49-6-6 provides that the circuit must "conduct a hearing pursuant to section two [§ 49-6-2] of this article and may modify a dispositional order" upon a motion by the DHHR. Additionally, West Virginia Code § 49-6-2 states that "the party . . . having . . . parental rights or responsibilities . . . shall be afforded a meaningful opportunity to be heard . . . ." Petitioner Father and his counsel were listed on the certificate of service that accompanied the DHHR's motion. Additionally, Petitioner Father did not assert that he failed to receive the DHHR's motion. A review of the motion clearly

---

[2]This Court has stated:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right-the failure to make timely assertion of the right-does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syl. Pt. 8, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

shows that the DHHR sought the termination of Petitioner Father's parental rights. Furthermore, Petitioner Father attended the hearing, and was represented by counsel. Most importantly, the circuit court heard testimony from six witnesses, including Petitioner Father. For these reasons, we find no error.

Finally, Petitioner Father argues that the circuit court erred in denying his motion for post-termination visitation because he had a substantial bond with the children. We have previously stated that

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 2, *In re Billy Joe M.,* 206 W.Va. 1, 521 S.E.2d 173 (1999).

Upon our review, the Court finds no error in the circuit court's decision to deny Petitioner Father post-termination visitation with his children. Circuit courts may grant post-termination visitation if it considers that such a relationship is in the children's best interests and if it would not unreasonably interfere with their permanent placement. *See State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996). In this case, the circuit court specifically found that Petitioner Father failed to successfully complete multiple improvement periods and that the children are now in a "stable and nurturing placement." This shows that the circuit court considered the history of the case and Petitioner Father's bond with his children, but it determined that post-termination visitation was not in the best interest of the children and would disrupt the children's current placement.

For the foregoing reasons, we find no error in the decisions of the circuit court and the July 8, 2013, and August 28, 2013, orders are hereby affirmed.

Affirmed.

**ISSUED**:   March 31, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II