# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RIMDAUGAS K.**
**Petitioner Below, Petitioner**

**FILED**
**May 22, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-174    (Fam. Ct. Gilmer Cnty. No. 21-D-26)**

**GERDA K.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rimdaugas K.[1] ("Father") appeals the Family Court of Gilmer County's *Final Order Modifying Parenting Plan and Child Support* ("Order") entered on September 16, 2022. The family court found that there was a substantial change in circumstances regarding the minor son, and that the son has a firm and reasonable preference to reside with Father. However, the family court did not find a substantial change in circumstances regarding the couple's two minor daughters. The family court also modified the child support obligations of both parties to reflect that the son now resides with Father. Father appeals the family court's order arguing that that the family court was clearly wrong when it found no substantial change in circumstances regarding the daughters. Respondent Gerda K. ("Mother") filed a response brief.[2] Father did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no abuse of discretion. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mother and Father are the parents of three minor children, a 16-year-old son and two daughters, aged 14 and 11.[3] The parties were divorced in South Carolina on April 2, 2018, and a parenting plan established Mother as the primary residential parent and Father

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See*, *e.g.*, W. Va. R. App. P. 40(e).

[2] Father is represented by Amy L. Lanham, Esq. Mother is represented by Michael A. Hicks, Esq.

[3] The children's ages are as of the date of the Order.

1

was granted two weekends per month of parenting time. Mother moved with the children to Gilmer County, West Virginia. Father resides in Georgia.

The order describes a series of events in 2016, when the parties were still married but separated. According to the order, Father took the children to his native country in Eastern Europe,[4] and Father did not return the children to the United States. As a result, Mother was forced to wage a legal battle to bring the children back the United States. The children were in Eastern Europe for approximately five months. As a result of the incident, Father lost unsupervised visitation of the children for two years, and he was forced to relinquish the children's passports.

The Order and the evidentiary record indicate that Mother and son had an acrimonious relationship after they moved to West Virginia and that the son told Mother that he wanted to live with his father in Georgia.

In January of 2022, Mother and son were involved in an altercation that left both with scratches. The daughters were not involved in, nor did they witness the physical altercation. Conflicting testimony was presented to the family court by witnesses concerning the event. In the hours after the altercation, Mother called law enforcement. A state trooper was dispatched to the house, and Mother described her version of the events to him. Apparently, the officer did not question the children and the officer told the son that he was lucky Mother was not pressing charges.

Soon after the altercation, Father instituted the instant petition to modify the parenting plan. Father alleges an abusive relationship between Mother and all the children. Moreover, he notes that the children's grades dropped after the they moved to West Virginia, and that the son no longer plays violin. Father also alleges that Mother engaged in parental alienation.

After Father filed his petition for modification of the parenting plan, Mother consented to son moving to Georgia with Father. The record reflects that son is happy with this living arrangement and his grades have improved.

Pursuant to Father's petition for modification, the family court directed the West Virginia Department of Health and Human Resources, Child Protective Services ("CPS") to interview the children. A report was provided to the family court and the parties, and a CPS representative testified at a March 7, 2022, hearing.

---

[4] Mother alleged in a June 27, 2022, family court hearing that Father told her that he was taking the children on a beach vacation in South Carolina.

The report and testimony state that the couple's daughters are happy living with Mother, that they do not want to live in Georgia with Father, and that their grades have improved as well. However, the report also states that there "is obvious psychological abuse of [the son] by [Mother] based on [the son's] statements and the fact that his sisters are not allowed to speak with him directly."

The CPS representative found evidence of maltreatment, and she was concerned with the daughters' mental health, as there were allegations that Mother instructed the daughters not to communicate with their brother. She found the son to be credible, and that there was evidence his sisters did not communicate with him.[5] However, the CPS representative wrote in her report that no specific maltreatment was identified, that Mother did not intend to hurt the children, and that the daughters were not endangered. CPS did not refer the case for further investigation because the son was no longer living with Mother and his sisters. The family court also heard testimony from Mother and Father on the record and from the children, in camera.

On September 16, 2022, the family court issued a final order modifying the parenting plan. The family court was concerned that CPS did not open "a full-blown investigation and did not talk to all parties;" however, the court noted that CPS closes cases when a child is out of the home. The family court found that Mother did not abuse her son based on the testimony presented. Nevertheless, it concluded that there was a substantial change in circumstances regarding the son, and that modifying the parenting plan to reflect that the son will live with Father was appropriate. The court noted that the son expressed a firm and reasonable preference to be with Father.[6] The order also notes that the son is doing better while living with Father, and his grades have improved.

The family court did not find a substantial change in circumstances regarding the daughters. The order notes that the daughters expressed a clear and unambiguous desire to remain with Mother, and that their grades have improved. Therefore, the court denied Father's petition to modify the parenting plan for the daughters.

Father appeals the family court's refusal to modify the parenting plan for the daughters. Our standard of review is as follows:

---

[5] The CPS representative could not substantiate the son's claim that Mother told the daughters not to communicate with the son.

[6] West Virginia Code § 48-9-402(b)(3) (2022) provides that "[t]he court may modify any provisions of the parenting plan without the showing of the changed circumstances . . . if the modification is in the child's best interests, and the modification . . . [i]s necessary to accommodate the reasonable and firm preferences of a child who[] has attained the age of 14[.]"

"In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-ICA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *3 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of a family court order).

On appeal, Father presents three assignments of error. First, he argues that based on the evidence presented, the family court abused its discretion when it denied his motion to modify the parenting plan with respect to the daughters. Second, he argues that the family court erroneously determined that the son was not abused, and that said abuse was not imputed to the daughters. Third, Father argues that the family court abused its discretion when, in the order, the court referenced hearsay statements of the state trooper even though the family court sustained hearsay objections in the hearing regarding the trooper's statements. Father also argues that the family court should not have referenced the 2016 temporary order that was issued soon after Father returned from Eastern Europe with the children.

We find that the Order was not clearly wrong and contains no errors of law. Both parties agree that the son should live with Father, and the Order reflects their agreement and the desires of the son. Moreover, the family court was not clearly wrong when it found no substantial change in circumstances with respect to the daughters. The record reflects that the daughters expressed a clear desire to live with Mother, and that they are doing well with Mother.

Father argues that Mother abused the son, and that pursuant to *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995), if one child is abused, all children in the home are abused.[7] In other words, Father argues that the daughters should be removed from Mother's custody due to her alleged abuse of the son.

Upon review, we do not find that the family court was not clearly wrong when it determined that the son was not abused. The CPS report and testimony indicates that there

---

[7] Syllabus Point 2 of *In re Christina L.* states that where "there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of physical and/or sexual abuse but is at risk of being abused is an abused child under W[est] V[irginia] Code [§] 49-1-3(a) (1994)." *Id.* at 448, 460 S.E.2d at 694.

4

were allegations of psychological and physical abuse, and that CPS found the son to be credible. Nevertheless, the CPS case was closed when the son relocated with Father. Importantly, the CPS never interviewed Mother. In other words, Mother was not given an opportunity to be heard on this subject before the report was delivered to the family court. Moreover, in *Christina L.*, the Supreme Court of Appeals of West Virginia declined "to adopt a blanket rule that parental rights must be terminated to all the children residing in the home based merely on the finding that one child is abused." *Id.* 194 W. Va. at 452, 460 S.E.2d at 698. In this case, neither CPS nor the family court found that the daughters are at risk of abuse, and it would be improper to find that the family court was clearly wrong based on the record on appeal.

Father also argues that the family court committed error by referencing a statement made by the trooper that the family court earlier ruled should not be part of the record. Father is correct that the family court sustained hearsay objections to the trooper's statements during the family court hearings. However, while the Order's reference to the officer's statements is erroneous, we find that the error was harmless. Pursuant to Rule 61 of the West Virginia Rules of Civil Procedure,[8] the appropriate test for harmless error is whether a court can "say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and that the judgement was not substantially swayed by the error." *Stephens v. Rakes*, 235 W. Va. 555, 573, 775 S.E.2d 107, 125 (2015) (citations omitted) (internal quotation marks omitted). It is clear the family court did not base its Order on the trooper's statements. Further, if the trooper's statements were removed from the record, the remaining evidence is sufficient to support the family court's decision.

Finally, Father argues that the family court should not have admitted the 2016 temporary parenting plan that was issued after Father took the children to Eastern Europe. According to Father, the 2016 temporary Order does not reflect the final parenting plan entered in 2018.

---

[8] Pursuant to the Family Court Rules of Practice and Procedure's incorporation of the West Virginia Rules of Civil Procedure in evidentiary matters, considerations regarding error contained within Rule 61 of the Rules of Civil Procedure are applicable. *See Matthew H. v. Heather H.*, No. 15-1074, 2016 WL 6312069, at *5 (W. Va. Oct. 28, 2016) (memorandum decision) (applying Rule 61 to an appeal of an evidentiary dispute arising in a family court proceeding); *see also Keen v. Coleman*, No. 21-0144, 2022 WL 1744509, at *4 (W. Va. May 31, 2022) (memorandum decision) (quoting Syl. Pt. 2, *Boggs v. Settle*, 150 W. Va. 330, 330, 145 S.E.2d 446, 447 (1965) ("On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties.")).

West Virginia Code § 48-9-206(c) (2022) typically bars a family court from considering a prior temporary parenting plan's custodial arrangement when determining the permanent parenting arrangement. However, West Virginia Code § 48-9-209(a)(4) (2022) also obligates a family court to consider a parent's persistent interference with the other parent's access to the children when a family court is determining parenting plans. The South Carolina family court order found that Father took the children to Eastern Europe against Mother's wishes, and that Father interfered with Mother's custodial rights. As a result, the South Carolina family court established a temporary parenting plan to prevent further interference.

In the family court hearing in this matter, Mother questioned Father about the 2016 Eastern Europe incident, and Father denied that he took the children without informing Mother. While West Virginia Code § 48-9-206(c) generally prohibits consideration of prior temporary parenting plans, here, the South Carolina court's 2016 order was used to contradict Father's testimony that Mother agreed to the Eastern European trip. As a result, the temporary order was introduced into evidence for impeachment purposes; not to argue that the temporary plan's custodial allocation should be adopted by the family court. Therefore, we find no error.

We conclude that the family court's September 16, 2022, Order was not clearly wrong, and the family court did not abuse its discretion. Finally, any error made by the family court in its order was harmless.

Accordingly, we affirm.

Affirmed.

**ISSUED:** May 22, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

6