# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.G. and L.G.**

**No. 24-595** (Nicholas County CC-34-2023-JA-138 and CC-34-2023-JA-139)

## MEMORANDUM DECISION

Petitioner Father P.G.[1] appeals the Circuit Court of Nicholas County's September 18, 2024, order terminating his parental rights to D.G. and L.G., arguing that the circuit court erred in finding that the DHS made reasonable efforts to preserve the family and in denying post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in December 2023 alleging that the parents' home was in an unsafe and deplorable condition and that they failed to provide adequate medical care for D.G.[3] The petition alleged that D.G. cut his leg with a hunting knife and told the petitioner that he needed to go to the hospital. The parents did not seek medical attention for the injury and instead wrapped a bandage and duct tape around the child's leg and sent him to school. Teachers later observed D.G.'s injury and found that it was so severe that it required stitches. After this incident, the DHS went to the petitioner's home and observed the home in deplorable condition, with a foul odor, clutter, and seven animals in the home. Additionally, one of the children's beds was wet with urine and had not been cleaned. The petitioner also had a previous abuse and neglect case in 2020 regarding the same deplorable home conditions. In that case, the children were removed and the petitioner was adjudicated and given an improvement period, which he successfully completed

---

[1] The petitioner appears by counsel Joseph Mosko. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Anthony William Selbe appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner and the mother adopted D.G. and L.G. in 2019.

after the DHS provided parenting and adult life skill services. The children were returned to the petitioner in July 2021.

In December 2023, the circuit court held a preliminary hearing and ordered that the DHS arrange and pay for psychological evaluations for the parents. The petitioner completed the psychological evaluation and his prognosis was guarded because he minimized the concerns that lead to the referral and generally lacked attachment to the children. In January 2024, the court held an adjudicatory hearing and found that the petitioner abused and neglected the children by virtue of the conditions in the home and his failure to obtain appropriate medical treatment. The court also stressed that this was the second case against the petitioner related to the home's condition and further found that the petitioner did not seek medical attention for D.G. in an attempt to avoid Child Protective Services ("CPS") involvement.

The circuit court held the dispositional hearing in March and September 2024. Several service providers testified during disposition. A licensed clinical social worker testified that she had been working with the petitioner and the children since the previous abuse and neglect case in 2021 and that the petitioner had been compliant. The children's psychiatrist testified that she had treated the children six or seven times in the previous eighteen months and that the children had substantial medical and psychological issues. Specifically, D.G. was diagnosed with autism, attention deficit disorder ("ADD"), obsessive compulsive disorder, Tourette's Syndrome, and a speech impediment. L.G. was diagnosed with ADD, trauma related disorders, and affective behavior disorder. The psychiatrist further testified that it appeared that the children had an emotional bond with the petitioner and the mother and that it would be detrimental if the bond were severed. Next, a CPS worker testified that both children were doing well in their current placement and that she had visited them at least once a month since their removal from the home. She testified that neither D.G. nor L.G. asked to go home or see the petitioner. Further, when asked about the petitioner and mother, D.G. became upset and said he did not want to see them. The guardian also proffered to the court that the children had no emotional attachment to the petitioner. Both the guardian and the DHS recommended termination of parental rights given the lack of attachment between the petitioner and children and because the conditions in the home had regressed since the previous abuse and neglect case.

The circuit court found that the petitioner had a "fundamental inability to understand the conditions of abuse and neglect," as he allowed the home to become dangerously deplorable on two separate occasions. The court found that the DHS made reasonable efforts to address the conditions of abuse and neglect and the petitioner failed to follow through with a reasonable family case plan or rehabilitative efforts. It also determined that both removals had been mentally and emotionally damaging to the children and that not returning the children to the petitioner would not be harmful to them in any way. Further, the court found that the children were ambivalent about returning home and had no bond with the petitioner. Ultimately, the court found that there was "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future even with the assistance of the [DHS]" and that the children's welfare

required termination of the petitioner's rights. Accordingly, the court terminated the petitioner's parental rights to the children. It is from the dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in finding that the DHS made reasonable efforts to preserve the family. Certainly, West Virginia Code § 49-4-601(d) requires DHS to "provide supportive services in an effort to remedy circumstances detrimental to a child." Further, West Virginia Code § 49-4-604(c)(6)(C)(iii) and (iv) require the circuit court to consider whether the DHS made reasonable efforts to preserve and reunify the family prior to terminating a parent's parental rights. The petitioner argues that the DHS never provided any services. However, the DHS arranged and paid for psychological evaluations for the petitioner and the mother. Further, the petitioner was provided eight months of services in the previous abuse and neglect case, roughly two years prior. Notably, the petitioner was actively participating in services, including sessions with the licensed clinical social worker, when the home again fell into deplorable condition. This evidence led the court to conclude that further services were not appropriate because the petitioner could not correct the issue "*even with the assistance of the* [*DHS*]." (Emphasis added). Therefore, the circuit court did not err in determining that the DHS made reasonable efforts to reunify the family.

Finally, the petitioner challenges the denial of post-termination visitation, specifically arguing that the circuit court did not undertake sufficient analysis to determine that post-termination visitation was not in the best interests of the children. We have previously held as follows:

> When parental rights are terminated due to neglect or abuse, the circuit court may . . . consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes . . . [t]he evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).[5] Here, the circuit court heard extensive testimony concerning the children's bond with the petitioner, albeit contradictory. The children's psychiatrist testified that the children shared a bond with the petitioner, while both the

---

[4] The mother's parental rights were also terminated. The permanency plan for L.G. is adoption in the current foster home. D.G. is currently placed in a residential therapeutic setting with a goal to transition into a foster home.

[5] We apply the standards in place at the time of the entry of the circuit court's order denying post-termination visitation, but note that after its entry this Court provisionally amended Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and "adopt[ed] appropriate standards for consideration of post-termination visitation outside of a fact-based context." *In re Z.D.-1*, 251 W. Va. 743, -- n.21, 916 S.E.2d 375, 382 n.21 (2025).

CPS worker and guardian informed the court that the children had no bond with the petitioner. The petitioner argues that the court should have given more weight to the psychiatrist's testimony than the testimony of the CPS worker and recommendation of the guardian. We refuse to reweigh evidence or decide the credibility of witnesses. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."); *see also In re D.S.*, 251 W. Va. 466, 914 S.E.2d 701, 707 (2025) (finding that this Court will review a circuit court's decision under the applicable standards and will "not reweigh the evidence or make credibility determinations"). The circuit court heard extensive testimony relevant to post-termination visitation regarding the children's bond with the petitioner and determined that there was no bond and that the children were ambivalent about returning to the petitioner's home. Further, the court found that not returning the children to the petitioner would "not be harmful to them in any way." Therefore, the circuit court did not err in denying the petitioner post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 18, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

4