# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

*In re* **C.C. and M.C.**

**No. 19-0322** (Mingo County 18-JA-73 and 18-JA-74)

**FILED**

**November 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.S.[1] appeals the Circuit Court of Mingo County's February 28, 2019 order terminating her parental rights to her children C.C. and M.C.[2]  Both the West Virginia Department of Health and Human Resources (DHHR)[3] and the guardian ad litem (guardian)[4] filed responses in support of the circuit court's order.  On appeal, Petitioner argues that the circuit court erred in absolving DHHR of its duty to make reasonable efforts to reunify the family and in terminating her parental rights.

Upon consideration of the standard of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I.      Factual and Procedural Background

Due to their uninhabitable home, Petitioner and her children's father were the subject of an abuse and neglect petition six months prior to the circumstances that gave rise to the petition we consider in this case.  DHHR provided them with services, and they corrected the issues, in part by moving into a new trailer.  As a result Petitioner and the children's father regained custody of C.C. and M.C., and the abuse and neglect case was dismissed in February 2018.

---

[1] Petitioner is represented by counsel Diana Carter Wiedel, Esq.

[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved.  *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

[3] DHHR is represented by counsel Mindy M. Parsley, Esq.

[4] Cullen C. Younger, Esq. acted as guardian ad litem for the children.

1

Only six months later, DHHR received a referral alleging that Petitioner's family home was again unfit for C.C. and M.C. The August 2018 referral detailed trash piled up in the yard and in the house, laundry piled up on the floors and throughout the hallway, and a roach infestation in the trailer. The referral also alleged that the trailer was being powered by a generator. When CPS workers arrived at the home, they observed roaches and bed bugs in the carpet and crawling along the door facing. Inside the home, they further observed bugs on the walls, ceilings, counters, in the children's rooms, on dishes and on the floor. The counters were covered with dirty dishes and rotted food, and there were roaches in the refrigerator. Dirty laundry covered the trailer, and CPS workers described the smell of the home as "overwhelming." As CPS workers conducted a review of the home and took photos of the conditions, C.C. and M.C. were attempting to clean the kitchen and tried to make excuses for the condition of the home. Upon exiting the home, CPS workers had to remove the bugs from their clothing and remove fleas from their arms and legs.

During their visit, CPS workers told Petitioner and the children's father that the home was in bad shape and that they needed to clean it up and do something about the bug infestation. The children's father reportedly yelled at workers to "take the God damn kids." Petitioner reportedly stated to the CPS workers that she was tired of having to deal with CPS and that "if [they] remove [her] kids, it's never going to get any better, I won't have them to clean."

DHHR petitioned the circuit court for immediate custody of the minor children alleging that they were in imminent danger, and removed the children from the home. DHHR's petition reiterated the CPS workers' observations of the home and their interactions with Petitioner and the children's father. The circuit court held a preliminary hearing, during which one of the CPS workers testified to his observations of the home – that the floor almost looked like it was moving there were so many bugs, and that he had never seen so many bugs in a home. Photographs of the home were admitted into evidence.

The CPS worker testified at the preliminary hearing that the family had, immediately prior to this incident, received services to remedy identical conditions. And, the worker stated that the parties obviously had not benefitted from those services in light of the deplorable condition of the home, which they had moved into recently, near the conclusion of the last abuse and neglect case. The CPS worker testified that DHHR could not provide any additional services since all available services had already been provided, particularly because DHHR had been required to go "above and beyond" for this family at substantial cost due to the children's father's significant medical issues. For those reasons, DHHR asked the circuit court not to require it to provide services that were previously offered. Neither Petitioner nor the children's father presented any witnesses at the hearing.

The circuit court found clear and convincing evidence that there was probable cause for the abuse and neglect petition and for the children to have been immediately removed from the home. The circuit court further granted DHHR's request not to provide additional

2

services. No objection was made by either Petitioner or the children's father. The adjudicatory hearing was continued due to the hospitalization of the children's father, who died prior to the rescheduled adjudicatory hearing. At the adjudicatory hearing, DHHR asked the circuit court to take judicial notice of the evidence presented at the preliminary hearing, and rested its case. Petitioner did not offer any testimony, and the circuit court adjudicated her as an abusive and neglectful parent. Petitioner, alleging that her circumstances had changed since the death of the children's father, asked for services and an improvement period, which were denied.

At the dispositional hearing, the guardian made the circuit court aware that one of the children had some significant mental health issues. The guardian stated that he thought some limited contact with Petitioner would be helpful for the child because she was very worried about her mother, and that while the CPS case worker had reached out to Petitioner several times to facilitate some form of contact, Petitioner was unresponsive. The guardian represented that the child was in a very fragile mental state, seeing demons and having hallucinations, and asked that Petitioner write a letter to her daughter. Petitioner represented to the court that her home was, at that time, in appropriate condition and available for anybody to come look at it.[5] The circuit court directed DHHR to consider that, but noted "sometimes it's too little, too late." The dispositional hearing was continued because a case plan was not filed.

At the continued dispositional hearing, DHHR asked the court to take judicial notice of all prior testimony, findings of fact and conclusions of law, and presented the case worker, Ms. Daniels, as a witness. Ms. Daniels testified that her case plan recommended termination of parental rights because Petitioner had very recently been involved in an abuse and neglect proceeding for the same issues and, as soon as that was resolved, she had fallen back into the same pattern. Ms. Daniels additionally testified that Petitioner had not contacted her to ask about her children or otherwise shown any initiative to have her children in her life – the only contact she had with Petitioner was when Petitioner contacted her to inform her that the children's father had passed away. In that same vein, Ms. Daniels testified that she had great difficulty contacting Petitioner to facilitate the children attending their father's funeral, and that Petitioner had not responded to requests to write a letter to her child. Ms. Daniels admitted that she had not done a home study, and did not know if the conditions alleged at the time of the petition were still in effect. The guardian agreed that termination of parental rights was appropriate and in the best interests of the children.

Petitioner testified that the prior abuse and neglect proceeding was closed, but that she was still receiving parenting services so DHHR would pay for a porch and wheelchair ramp for the children's father, which had never occurred. Petitioner testified that parenting

---

[5] Petitioner was not present at the dispositional hearing, but her counsel made representations on her behalf.

3

service providers had been in her home the month the children were removed and never raised any issues with the condition of her home.

Petitioner disagreed with "most" of the CPS worker's testimony regarding the condition of her home, agreeing only that there was laundry in front of the washer that she was getting ready to wash and that the girls' rooms were messy, but were the children's responsibility to clean. She testified that "everything was clean" other than the baskets of laundry, which she had fallen behind on because she was taking care of the children's father. She stated that she had taken care of the things that were "a little messy," taken steps to paint the ceiling, and admitted that she had "a few roaches" but explained she was having Orkin address it. Petitioner further testified that the photographs made her home look worse than it was and no one had ever returned to the home to assess it after the children were removed. She testified that at the time the CPS worker arrived at her home, she told him she could have it fixed in an hour, and had everything cleaned up before he even returned to remove the children. She stated that the CPS worker was lying when he testified that she said the home would never be clean if she didn't have her children to help clean it. She also testified that the CPS worker had staged photographs to make it look worse than it was, and "bare faced lied when he said that [she] had bed bugs and everything else . . .".

When asked about her lack of contact with the case worker to check on her children, Petitioner admitted that she had never attempted to contact DHHR or the specific case worker because she didn't know who to speak to. But, she also testified that she knew Ms. Daniels was her case worker as of October and hadn't attempted to contact her in the following months. And, relating to her failure to write a letter to her daughter, Petitioner testified that she didn't know what to put in the letter.

The circuit court found that Petitioner was unwilling and unable to provide adequately for the needs of her children and that there was no likelihood that those conditions could be corrected. The circuit court based its findings on the recent case against Petitioner for the same allegations, her insistence that her home was clean or could be cleaned in an hour, and her total lack of effort to participate, evidenced, in part, by her failure write her daughter a letter and her apparent apathy about the psychological state of her daughter. As a result, Petitioner's parental rights were terminated. On appeal, Petitioner challenges both the circuit court's decision to absolve DHHR of providing her services and the termination of her parental rights.

## II.    Standard of Review

In abuse and neglect proceedings, we have established a deferential standard of review in relation to a circuit court's application of its findings of fact to the applicable law:

4

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).[6]

### III. Discussion

On appeal, Petitioner challenges both DHHR's denial of services pursuant to West Virginia Code § 49-4-601(d),[7] and the termination of her parental rights. Petitioner does not appear to dispute that reasonable efforts were not required of DHHR under West Virginia Code § 49-4-602(d) before it removed the children from her home upon a finding of imminent danger. Rather, Petitioner seems to take issue with the lack of services post-petition, invoking an analysis under West Virginia Code §§ 49-4-604(b)(6) and (7), which require the circuit court, at the dispositional phase, to consider the efforts made by DHHR to provide remedial and reunification services to the parent, or whether such services or reasonable efforts were required or unreasonable due to specific circumstances.[8] It follows

---

[6] Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

[7] That code section provides that "[a]t the time of the institution of any proceeding under this article, the department shall provide supportive services in an effort to remedy circumstances detrimental to a child."

[8] Petitioner's brief undertakes an analysis under West Virginia Code § 49-4-605, which details when department efforts to terminate parental rights are required. Petitioner places credence on § 49-4-605(b)(3), which states that "[t]he department may determine not to file a petition to terminate parental rights when . . . [t]he department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home." She then concludes that "[a]ccording to statute, even in the most dire circumstances, a petition to terminate parental rights need not be filed in cases in which services have not been provided to the parents."

Petitioner's application of those statutes to this case is misguided. That statute serves only to place upon DHHR a *mandatory* duty to file a petition and seek termination

that because Petitioner's parental rights were terminated at the dispositional phase, analysis of both of Petitioner's assignments of error is intertwined.

As to the consideration of DHHR's efforts, West Virginia Code § 49-4-604(b)(6)(C) provides, in relevant part, that

> In determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent. The court order shall state: . . . (iv) [w]hether or not the department made reasonable efforts to preserve and reunify the family, or some portion thereof, including a description of what efforts were made or that those efforts were unreasonable due to specific circumstances.

In addition, West Virginia Code § 49-4-604(b)(7) identifies circumstances in which DHHR is not required to make reasonable efforts. In part, that code section states:

> For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, [DHHR] is not required to make reasonable efforts to preserve the family if the court determines: (A) The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, *but are not limited to*, abandonment, torture, chronic abuse and sexual abuse. . . .[9]

While these circumstances may not fit any of the enumerated criteria listed in § 49-4-604(b)(7), we note that the statute also contains the expansive language "include, but are not limited to."

---

of parental rights as a disposition under certain circumstances, and subsection (b)(3) serves only to absolve DHHR of that mandate and leave the option to DHHR as to whether to file a petition at all, or to seek a less restrictive disposition. It does not, as Petitioner appears to contend, stand for the proposition that DHHR may not seek termination of parental rights unless services have been provided to the parents. However, as noted by Petitioner generally, there is a duty on behalf of DHHR under West Virginia Code § 49-4-601(d) to provide services, and, for that reason, we undertake the appropriate analysis under West Virginia Code § 49-4-604 as to when DHHR may be absolved of that duty.

[9] Emphasis added.

This case is the second abuse and neglect proceeding filed against Petitioner within six months based on the same allegations. In the prior proceeding, Petitioner was provided extensive services, "above and beyond" the typical reasonable efforts, and even moved into a new home. Petitioner began residing in that home toward the end of the first proceeding, and it fell into a deplorable state in a very short time frame after DHHR ceased intervention. Given such an abbreviated time between the dismissal of the first petition and filing of the second petition, viewed in combination with the extensive DHHR services provided during the first case such that no other or additional services were available or prospectively helpful to Petitioner, we cannot find that the circuit court erred in concluding that DHHR was not required to provide services under these particular circumstances.

Furthermore, based on Petitioner's adamant testimony at the dispositional hearing that her home was clean or could have been cleaned within an hour, we are perplexed at the argument on appeal that services were necessary or would have made a difference. Petitioner's continued denial that conditions of abuse and neglect existed strikes at the crux of why the circuit court terminated Petitioner's parental rights, and why we do not find that the circuit court was clearly erroneous in doing so.

Termination of parental rights is appropriate "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child."[10] Further, West Virginia Code § 49-4-604(c)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that the subject parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help," and that those conditions exist in circumstances where the parent has

> [n]ot responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Irrespective of whether DHHR returned to Petitioner's home to determine its suitability, at the heart of the allegations against Petitioner is her failure to admit that the conditions of her home were unsuitable for her children. We have repeatedly held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic

---

[10] W. Va. Code § 49-4-604(b)(6).

allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.[11]

Petitioner testified at length, in spite of photographic evidence to the contrary, that CPS workers had "bare-faced lied" about the conditions of her home, had staged photographs to make it look worse than it was, and that her home was "clean" aside from needing to catch up on some laundry and having "a few bugs." She also testified that her home was "clean" by the time CPS workers returned to remove her children. This serves only to attest that Petitioner's view of her home and its suitability for a child is skewed. A problem is untreatable when a parent refuses to acknowledge the truth of the basic allegation against them, and, in this case, the denial has resulted and is likely to result in a continuous cycle of DHHR intervention, correction, and re-offense.

It is apparent from the record and Petitioner's past history with DHHR that she has not been responsive to rehabilitative efforts in the past, and that there is no likelihood that the conditions can be corrected, either with, or without help, insofar as the conditions are highly likely to reoccur as soon as intervention ceases. Despite the services provided by DHHR, Petitioner is not able to accurately assess the suitability of her home for a child. We find that Petitioner's failure to admit to the abuse and neglect, failure to meaningfully participate, and failure to contact DHHR to inquire about her children are circumstances that cannot reasonably be substantially corrected in the near future and termination of parental rights is necessary to protect the children's welfare. For those reasons, the circuit court did not err in terminating her parental rights based on the record before it.

Finally, though not briefed by the parties, we note that the circuit court order references the standard for continued visitation between children and a parent whose rights have been terminated. That standard is as follows:

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether the continued visitation or other contact with the abusing parent is in the best interests of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such a request. The evidence must indicate that such

---

[11] *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interests.[12]

Though recited by the circuit court, the order is devoid of any analysis as to whether visitation between Petitioner and her children is warranted given the circumstances. While we do not suggest that any such visits take place in Petitioner's home, given the guardian's insistence that the children have a strong bond with their mother and have concerns as to her well-being, we remand with instructions that the circuit court consider the issue of post-termination visitation between Petitioner and her children. Before imposing any visitation that the circuit court may see fit, however, we direct that psychological evaluations be conducted as to both Petitioner and the children in light of the mental health and behavioral concerns at play. The court's analysis as to the propriety of any post-termination visitation, in whatever form that may take, should be undertaken with advisement from the appropriate mental health professionals and the guardian.

## IV.    Conclusion

For the above-stated reasons, we do not find that the circuit court erred in determining that services were not required of DHHR in this particular case, nor do we find that the circuit court erred in terminating Petitioner's parental rights. As a result, we affirm the February 28, 2019 order of the Circuit Court of Mingo County in those respects. However, we remand for determination as to whether post-termination visitation may be appropriate after psychological evaluations are conducted as to Petitioner and the children.

Affirmed and remanded for further proceedings.

**ISSUED: November 19, 2019**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[12] Syl. Pt. 5, *In re Christine L. and Kenneth J.L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).