**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.H.-1 and S.H.-2**

**No. 21-0286** (Randolph County 19-JA-165 and 19-JA-166)

**MEMORANDUM DECISION**

Petitioner Father D.H., by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's March 17, 2021, order terminating his parental rights to S.H.-1 and S.H.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Melissa T. Roman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for a post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court erred in denying petitioner's motion for a post-adjudicatory improvement period and in terminating his parental rights. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate, in part, and remand the matter for further proceedings consistent with this decision.

In November of 2019, the DHHR filed an abuse and neglect petition alleging that the mother abused buprenorphine without presenting a valid prescription and failed to obtain prenatal care while pregnant with S.H.-2. When the child was born, she exhibited symptoms of drug exposure. The petition also alleged that petitioner and the mother's first child, S.H.-1, was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the two children share the same initials, they will be referred to as S.H.-1 and S.H.-2, respectively, throughout this memorandum decision.

also born drug-exposed. At the time of S.H.-2's birth, petitioner was incarcerated. However, prior to his incarceration, the DHHR alleged that petitioner engaged in domestic violence with the mother in the home. Further, the mother disclosed that both she and petitioner struggled with substance abuse for many years, having abused drugs together. The DHHR also reported that the parents often engaged in domestic violence that occurred as a result of their substance abuse, and that S.H.-1 was negatively impacted by the domestic violence. S.H.-1 was able to "describe these altercations and indicate[d] that she would become extremely fearful and scared." Finally, the DHHR alleged that petitioner had a lengthy criminal history that included charges of grand larceny, wanton endangerment, possession of a controlled substance, trespass, and assault. Based on this conduct, the DHHR alleged that petitioner abused and neglected the children.

In February of 2020, the circuit court held an adjudicatory hearing, during which a Child Protective Services ("CPS") worker indicated that then-five-year-old S.H.-1 described domestic violence between petitioner and the mother occurring in the home. According to the record, when asked whether the child "disclosed that she saw her parents fighting which resulted in her seeing blood," the witness responded, "[t]hat is correct. She talked about an instance where they were bleeding and how scared she was. . . . [S]he will just talk in depth[] about how scared it would make her and she would cry and she would shake." Conversely, petitioner testified that he did not "recall getting violent with anyone or [anyone] getting violent with me." Instead, petitioner admitted only to having argued with the mother in the presence of S.H.-1. Petitioner also testified to the allegations of substance abuse, explaining that several years prior he was prescribed oxycodone and that after his oxycodone prescription ended, he went to a Suboxone clinic to get off oxycodone. Petitioner disputed the mother's assertion that he struggled with substance abuse because all the medications he took were lawfully prescribed. Further, petitioner indicated that he believed the mother's use of buprenorphine was pursuant to a valid prescription. Petitioner also indicated that he found out the mother was pregnant with S.H.-2 one week before he was incarcerated and remained incarcerated throughout the entire pregnancy. Based on the evidence, the court found that

> there is no—no real dispute about whether or not there was domestic violence in the home. The real issue is the type of violence—whether it was physical or whether it was verbal. I don't think that it has to be limited to one or the other if the presence of domestic violence is adverse—has adverse effects on the children.

The court went on to find that the child described feeling "unsafe and scared" as a result of the altercations. The court also found that petitioner's

> incarceration was . . . a result of his own conduct. And, because he was incarcerated, he was unable to participate with the mother's pregnancy, and it rendered him unable to be able to identify whether or not she was abusing drugs although he knew that—that he knew before he was incarcerated, that she used drugs. Whether it was legally or illegally, I don't know.
>
> But he did not—he was not available to monitor the mother, to assist her in any kind of drug treatment that might have been available to her, to encourage her to go to that. And, as a result of that, the child was born drug exposed.

So based upon the testimony that has been provided, I will adjudicate [petitioner] as abusive and neglectful, for those reasons.

The court reiterated these findings in its adjudicatory order, specifically ruling that "[t]here is no real dispute as to whether there has been domestic violence in the home" and that "[t]he only issue disputed is rather it is physical or verbal. Either way, it has had an adverse impact on the child." Further, the court found that petitioner

was aware that [the m]other was pregnant and [he] was incarcerated shortly after he learned she was pregnant. That incarceration was a result of his own conduct and because of his incarceration he was unable to participate during [the m]other's pregnancy and was not available to monitor her or assist with any treatment that may have been favorable, which played a role in leading to the child being born drug exposed.

Following the adjudicatory hearing, petitioner was released from incarceration.

In February of 2021, the court held a dispositional hearing, during which petitioner testified in support of his motion for an improvement period. During the hearing, petitioner was asked if he "agree[d] or disagree[d] there was domestic violence in the home," to which petitioner responded that "[a]fter looking at the State laws—arguing is considered domestic violence. Yes, I agree." Petitioner was again specific, however, that no physical violence occurred, as he agreed only that "there was arguments and yelling in the home." Petitioner also described his efforts to correct the conditions at issue while incarcerated, indicating that he took a CBISA course dealing with substance abuse; Thinking for a Change, which addressed issues of cognitive skills; and additional courses designed to facilitate employment. Petitioner indicated that he was on parole at the time of the hearing and that all of his random drug screens had been negative, with the exception of his first screen which was positive for buprenorphine from an old prescription. Petitioner was also participating in a Suboxone clinic in Clarksburg that included counseling in addition to medication. In regard to his willingness to participate in an improvement period, petitioner was asked the following: "Even though there is this dispute over what type of domestic violence occurred in your home, you are willing to go through anger management or domestic violence classes or training?" Petitioner responded that he was "willing to do anything the court asks to see [his] kids." Upon cross-examination, petitioner was asked if he thought he was abusive and neglectful to the children, to which he responded, "I neglected them from committing crimes and going to prison, yes." Further, petitioner stated that the verbal altercations "definitely had an impact" on S.H.-1 and that arguing around her was abusive and neglectful. Petitioner was also asked if he had a history of substance abuse, to which he replied no, although he elaborated that "[s]omeone might think so." The DHHR then presented testimony from the individual who performed petitioner's drug screens, prior to which the DHHR admitted that it could concede that petitioner "ha[d] been largely participating in the drug screening." The witness confirmed this concession, indicating that petitioner had failed only his first two screens and had not failed another thereafter, comporting with petitioner's admission to having used an old buprenorphine prescription upon his release from incarceration.

3

In ruling on petitioner's motion, the court found that petitioner testified that he would be likely to fully participate in an improvement period and had, in fact, "been fairly compliant with the requirements of check-in and drug screens" over the preceding six to eight weeks. The court went on to indicate that it was "concerned about his drug use, his history of drug use and his candor to the court in regard to his history of drug use based on his participation in this abuse and neglect proceeding as well as his criminal history." The court also expressed concern with petitioner's "candor to the court, and maybe even to himself, about the domestic violence in the home." The court found that at adjudication, petitioner denied violence at all, but at disposition he acknowledged verbal altercations though not physical altercations, which the court found was inconsistent with the evidence. The court also found that physical and verbal violence in the home had a large impact on the oldest child. According to the court, petitioner downplayed the circumstances in the home and failed to convince the court that he acknowledged his role in the issues in the case. The court also found that petitioner was not honest about his history of substance abuse and denied that his prescription for Suboxone is due to an opioid addiction. Because of his inability to be honest with the court, his failure to acknowledge his substance abuse history for which he was currently undergoing treatment, and his failure to acknowledge the extent of domestic violence, the court found that an improvement period would be an exercise in futility. Accordingly, the court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. The court further found that the children's best interests required termination of petitioner's parental rights. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]According to respondents, the mother is currently participating in an improvement period. The permanency plan is reunification with the mother upon successful completion of her improvement period, while the concurrent permanency plan is adoption in the current foster homes.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his request for a post-adjudicatory improvement period and terminating his parental rights. Upon our review, we agree with petitioner that these rulings were in error. In reaching this determination, it is necessary to first address certain errors in the circuit court's adjudication of petitioner in order to address how these errors were compounded at disposition.

The first error at adjudication was the circuit court's ruling that petitioner was responsible for the mother's substance abuse without requiring the DHHR to prove that he was aware that she abused drugs during her pregnancy. In the case of *In re A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017), this Court addressed how a mother's substance abuse while pregnant could result in adjudication. In ruling on that matter, the court also addressed fathers of children who are born drug-exposed, and set forth the following: "[W]ith respect to [f]ather's alleged failure to stop [m]other's illegal drug use during her pregnancy, the statutes governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's *knowledge* that another person is harming his/her child." *Id.* at 392, 801 S.E.2d at 270 (emphasis added). In the current proceedings, the DHHR established, at best, that petitioner knew the mother abused drugs in the past. Importantly, there is no evidence to establish that petitioner had knowledge of the mother's substance abuse while she was pregnant with S.H.-2, especially given that petitioner was incarcerated roughly one week after learning of the mother's pregnancy. Simply put, the court's finding that petitioner's inability to ensure that the mother received appropriate treatment resulted in the child being born drug-exposed was an improper basis for adjudication.

Second, the circuit court's failure to make a ruling at adjudication as to whether the DHHR established by clear and convincing evidence that *physical* domestic violence occurred in the home violated petitioner's due process rights. At adjudication, the court specifically found that the evidence was conflicting as to whether the domestic violence in the house was verbal or physical without resolving the evidence or making a determination as to whether physical violence occurred. Although this does not have an impact on the appropriateness of petitioner's adjudication,[3] it nonetheless had a drastic impact on petitioner's ability to satisfy the applicable burden for obtaining an improvement period. As this Court has explained,

---

[3]As the circuit court found, there was no dispute as to whether domestic violence occurred in the home. W. Va. Code § 49-1-201 defines "domestic violence" as that term is defined in W. Va. Code § 48-27-202, which sets forth the following:

> "Domestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members, as that term is defined in section two hundred four of this article:
> (1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
> (2) Placing another in reasonable apprehension of physical harm;
> (3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;

(continued . . . )

5

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). At disposition, the court relied on this law in denying petitioner's request for an improvement period and terminating his rights, finding that he failed to acknowledge the physical violence in the home. We find, however, that the court's failure to make a ruling as to whether physical violence occurred in the home prior to disposition deprived petitioner of notice that such a condition of abuse and neglect needed acknowledged. As we have explained,

[t]he purpose of requiring specific allegations [in petitions alleging abuse and/or neglect] is to afford the charged parent with notice of why the termination proceeding is being conducted and to afford him an opportunity to address the charge. *See In re: Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Such a procedure is, in effect, required to guarantee that the parent will not be deprived of his custodial rights without due process of law as is required by *Stanley v. Illinois*, [405 U.S. 645 (1972)], and *In re: Willis*, [157 W. Va. 225, 207 S.E.2d 129 (1973)].

*In re Samantha M.*, 205 W. Va. 383, 389, 518 S.E.2d 387, 393 (1999). Although it is true that the DHHR's petition contained these allegations, the court's finding at adjudication that the evidence was insufficient to specifically find that physical violence occurred resulted in the same due process deprivation as set forth in *Samantha M.* Because petitioner had no notice of the need to acknowledge physical violence, we find that denial of his motion for an improvement period and termination of his parental rights on this ground was in error.

Further, the court abused its discretion in denying petitioner's motion for an improvement period upon its finding that petitioner failed to acknowledge his drug addiction. Importantly, drug abuse was neither included in the DHHR's petition as an allegation against petitioner nor was it an issue for which he was adjudicated. Further, other than his two initial screens, petitioner did not test positive for drugs during the proceedings below. At disposition, the court found that petitioner failed to acknowledge his drug addiction because he was participating in

---

(4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and

(5) Holding, confining, detaining or abducting another person against that person's will.

As such, we find no error in the circuit court's adjudication of petitioner as an abusing parent because the evidence shows that, at a minimum, petitioner engaged in conduct that placed S.H.-1 in fear of physical harm.

Suboxone treatment and indicated that it was to treat conditions other than substance abuse. The court found that this did not comport with its understanding of the drug, but it was presented with no evidence regarding petitioner's treatment to contradict his testimony. In short, there was no evidence introduced that petitioner was prescribed Suboxone to treat a drug addiction or that he abused the medication.

Pursuant to West Virginia Code § 49-4-604(f),

[t]he court may not terminate the parental rights of a parent on the sole basis that the parent is participating in a medication-assisted treatment program, as regulated in § 16-5Y-1 et seq., for substance use disorder, as long as the parent is successfully fulfilling his or her treatment obligations in the medication-assisted treatment program.

In discussing this statute, this Court has explained that "when medication-assisted treatment is appropriate and potentially beneficial, any bias against its use is contrary to the public policy of this State as announced by the Legislature." Syl. Pt. 5, in part, *In re M.M.*. 244 W. Va. 316, 853 S.E.2d 556 (2020). While the circuit court couched its decision in terms of petitioner's failure to acknowledge his substance abuse, it is clear that it denied his motion for an improvement period and terminated his parental rights because of his participation in a medication-assisted treatment program and his explanation for his participation in the program, which no party introduced evidence to contradict. As such, we find that it was inappropriate to deny petitioner's motion for an improvement period and terminate his parental rights upon this evidence.

We have previously held that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Based on the foregoing, we find that the rules and statutes governing abuse and neglect proceedings were disregarded or frustrated such that the circuit court's order must be vacated and the matter remanded with directions for petitioner to be granted a post-adjudicatory improvement period and supervised visitation with the children under terms and conditions recommended by the multidisciplinary team.

It should also be noted that we reject the DHHR's position that petitioner's refusal to stipulate to his adjudication constitutes a failure to acknowledge the conditions of abuse and neglect. Nothing in the statutes or rules governing abuse and neglect proceedings or this Court's prior holdings supports the idea that a parent should be required to absolve the DHHR of its statutory duty under West Virginia Code § 49-4-601(i) to prove conditions of abuse and neglect by clear and convincing evidence in order to be deemed as having acknowledged the conditions

of abuse and neglect at issue. While it may be the case that stipulation at adjudication can be relied on to support that a parent has acknowledged the conditions, we nonetheless reject the proposition that any parent who does not stipulate to their adjudication cannot be said to have acknowledged the conditions of abuse and neglect at issue.

For the foregoing reasons, we vacate the circuit court's March 17, 2021, order denying petitioner's motion for a post-adjudicatory improvement period and terminating his parental rights and remand this matter for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded with direction.

**ISSUED**: November 15, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice William R. Wooton

**DISSENTING:**

Justice Tim Armstead would include on a Rule 19 argument docket
Justice John A. Hutchison

Hutchison, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a published opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.