IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

_____

No. 23-163

_____

FILED

October 29, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* C.F. & T.F.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Joanna I. Tabit, Judge
Civil Action Nos. 22-JA-312 & 22-JA-313

AFFIRMED, IN PART; VACATED, IN PART; AND REMANDED
_____

Submitted: October 9, 2024
Filed: October 29, 2024

Jason S. Lord, Esq.
Charleston, West Virginia
Attorney for Petitioner, J.F.

Sharon K. Childers, Esq.
Charleston, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
Spencer J. Davenport, Esq.
Assistant Solicitor General
Heather L. Olcott, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent,
Department of Human Services

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.      "For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018).  Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syl. Pt. 8, *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

i

3. "The mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an 'abused child' or 'neglected child' as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named." Syl. Pt. 3, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023).

4. "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

ii

**HUTCHISON, Justice:**

The petitioner, J.F., appeals the February 15, 2023, order of the Circuit Court of Kanawha County terminating his parental rights to his children, C.F. and T.F.[1]  In this appeal, the petitioner contends that the circuit court lacked jurisdiction to adjudicate T.F. as an abused and neglected child because T.F. had been placed in a legal guardianship with his paternal grandparents and did not reside in the petitioner's home when the alleged abuse and neglect occurred.  The petitioner further argues that the circuit court erred by terminating his parental rights instead of employing a less restrictive alternative.  Finally, the petitioner asserts that the circuit court erred by not affording him post-termination visitation with his children.

Upon consideration of the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we find that the circuit court failed to make the requisite findings for adjudicating T.F. as an abused and neglected child and, therefore, vacate the circuit court's order with respect to T.F. and remand this case to the circuit court for further proceedings in that regard.  We find no error in the circuit court's termination of the petitioner's parental rights to C.F. or its refusal to grant post-termination visitation to the petitioner.  Accordingly, the circuit court's final order is affirmed, in part, and

---

[1] We use initials instead of full names to protect the identities of the juveniles involved in this case.  *See* W. Va. R. App. Proc. 40(e).

1

vacated, in part, and this case is remanded for further proceedings consistent with this opinion.

## I.     Facts and Procedural Background

An abuse and neglect petition was filed by the Department of Human Services ("DHS")[2] against the petitioner on August 1, 2022, after he was arrested for felony wanton endangerment involving a firearm, sexual assault in the second degree, and child neglect resulting in injury/child neglect creating a risk of injury. The petition alleged that S.H., the mother of C.F.,[3] reported to the West Virginia State Police that during the weekend of July 8 through July 11, 2022, she learned that the petitioner was having an affair, which led to several arguments between them. According to S.H., during one argument, the petitioner threw her to the ground by her neck. She disclosed that on another occasion, the petitioner pulled out a handgun and threatened to kill her and C.F., pointing the gun at the child and saying he would "put him in the ground." She further reported that

---

[2] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[3] S.H.'s other child, J.H., and his biological father, K.C., were also included in the proceedings below. S.H.'s parental rights to both of her children were eventually terminated, but she did not file an appeal, and she is not a party before this Court in this case.

2

the petitioner sexually assaulted her in front of C.F.[4] When interviewed, C.F. made similar disclosures and reported other incidents of domestic violence in the home. The initial petition contained no allegations against S.H., so C.F. remained in her custody.

With regard to T.F., the petition alleged that his mother, M.H., was not involved in his life. The petition further provided:

> [The petitioner's] parents, [R.F. and E.F], have guardianship of the minor child [T.F.] and state this is because [S.H.] wants nothing to do with him. They side with [the petitioner's] version of events and say that [S.H.] is the problem in the relationship, due to abuse of anxiety medication.[5]

(Footnote added). The petition also alleged that M.H. and the petitioner had a Child Protective Services ("CPS") referral history that include allegations of physical abuse and medical neglect of T.F. in 2014, domestic violence between them in 2015, and a second instance of domestic violence along with substance abuse in 2015. Notably, the "Report of the Guardian *Ad Litem*" that was submitted to the circuit court indicated that although DHS investigated these allegations, none of them were substantiated.

---

[4] The petition also alleged that the petitioner "stalked" C.F.'s maternal grandmother's home and confronted C.F.'s uncle, beating his car with a baseball bat. The petition further indicated that S.H. told a child protective services worker that the petitioner is prescribed Tramadol and Neurontin and "eats them like candy."

[5] As the legal guardians of T.F., R.F. and E.F. were named as respondents in the abuse and neglect petition, but T.F. remained in their care and custody. While this appeal was pending, this Court granted a motion to realign R.F. and E.F. as non-participants, and thus, they have not otherwise appeared before this Court.

3

An amended abuse and neglect petition filed on September 20, 2022, contained the same allegations against the petitioner but added new allegations concerning S.H. Specifically, the petition alleged that S.H. had placed C.F. in danger on two occasions resulting in her arrest. C.F. was removed from S.H.'s custody and was placed with R.F. and E.F.

An adjudicatory hearing for the petitioner was held on November 18, 2022.[6] According to the adjudicatory order entered on December 2, 2022,[7] DHS presented testimony from Travis Hogbin, a former employee of the Child Advocacy Center of Women's and Children's Hospital. Mr. Hogbin testified that he had interviewed C.F. and that the child disclosed domestic violence in the home between the petitioner and S.H. Mr. Hogbin further testified that C.F. reported that the petitioner called him a "piece of shit" and a "piece of poop" when angry.[8] Following this testimony, the DHS orally moved to amend the abuse and neglect petition to include an allegation that the petitioner had verbally abused C.F., and the motion was granted. No other testimony was presented at the adjudication of the petitioner, but according to the adjudicatory order, the circuit court took

---

[6] This was also the preliminary hearing for S.H. and the adjudicatory hearing for M.H.

[7] A transcript of the adjudicatory hearing was not included in the appendix record submitted to this Court.

[8] The adjudicatory order indicates that during Mr. Hogbin's testimony, the petitioner "yelled out of turn that the testimony was 'lies.'" The petitioner did not testify on his own behalf.

4

judicial notice of "21-DV-1162 involving Respondent Mother [S.H.] and 15-DV-663 involving Respondent Mother [M.H.] as well as [petitioner's] current criminal charges." In adjudicating the petitioner, the circuit court made the following findings in its order:

> [T]he Department has presented uncontroverted evidence of pervasive domestic violence perpetrated by [petitioner] against [S.H.] and [M.H.] and in the presence of one or more of the minor children.

> [T]he Department presented uncontroverted evidence of verbal abuse of the minor [C.F.] by [the petitioner].

> [The petitioner] is an abusive and neglectful parent as defined by W. Va. Code § 49-1-201 et seq. in that he has engaged in and exposed the minor children [T.F.] and [C.F.] to a pervasive pattern of domestic violence and has verbally abused the minor child [C.F.].

Thus, the circuit court adjudicated the petitioner as an abusing and neglecting parent and C.F. and T.F. as abused and neglected children.

Thereafter, at a disposition hearing held on February 1, 2023, the circuit court terminated the petitioner's parental rights. In the disposition order entered on February 15, 2023, the circuit court found that "the Department could not make reasonable efforts to provide remedial services to [the petitioner] due to his incarceration and his denial of the circumstances giving rise to the filing of the Petition." The circuit court further found that reunification was not in the best interests of any of the children and that termination of parental rights was the least restrictive dispositional alternative available and the best way to achieve permanency for the children. Finally, the circuit court found that post-

5

termination visitation was not in the best interests of either child. Upon entry of the

dispositional order, the petitioner filed this appeal.[9]

## II.     Standard of Review

Our standard of review for abuse and neglect cases is well established. As

this Court has long held:

> "Although conclusions of law reached by a circuit court
> are subject to *de novo* review, when an action, such as an abuse
> and neglect case, is tried upon the facts without a jury, the
> circuit court shall make a determination based upon the
> evidence and shall make findings of fact and conclusions of
> law as to whether such child is abused or neglected. These
> findings shall not be set aside by a reviewing court unless
> clearly erroneous. A finding is clearly erroneous when,
> although there is evidence to support the finding, the reviewing
> court on the entire evidence is left with the definite and firm
> conviction that a mistake has been committed. However, a
> reviewing court may not overturn a finding simply because it
> would have decided the case differently, and it must affirm a
> finding if the circuit court's account of the evidence is plausible
> in light of the record viewed in its entirety." Syl. Pt. 1, *In
> Interest of Tiffany Marie S*., 196 W.Va. 223, 470 S.E.2d 177
> (1996).

---

[9] The dispositional order also terminated M.H.'s parental rights to T.F. While this appeal was pending, S.H.'s parental rights to C.F. were terminated. As previously noted, S.H. did not file an appeal and neither did M.H. The DHS has advised this Court that in December 2023, C.F. was removed from R.F. and E.F.'s home because they allowed the petitioner to have contact with him. C.F. was then placed with his maternal grandparents. The permanency plan is for C.F. to be adopted by his maternal grandparents and for T.F. to be adopted by his paternal grandparents. The concurrent plan is guardianships in the respective homes.

6

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).  With this standard in mind, we consider the parties' arguments.

### III. Discussion

We begin our analysis with the petitioner's contention that the circuit court did not have jurisdiction to adjudicate T.F. as an abused and neglected child.[10]  The petitioner argues the circuit court lacked jurisdiction because T.F. was residing with his paternal grandparents under a legal guardianship when the abusive conduct purportedly occurred, and the petition alleged that only C.F. was abused.  The DHS agrees with the petitioner insofar as it concedes that the circuit court's adjudicatory order fails to include the specific findings necessary to support the conclusion that T.F. was an abused and/or neglected child given that he was not living in the petitioner's home when the events that led to the filing of the abuse and neglect petition occurred.[11]

---

[10] In his brief, the petitioner makes clear that he is not seeking to disrupt T.F.'s placement with R.F. and E.F.  The petitioner states that he is challenging the circuit court's adjudication of T.F. only because he wishes to have visitation with him.

[11] This Court has recognized that the definition of "abused child" in West Virginia Code § 49-1-201 (2018), set forth *infra*, "allows for a finding of abuse as to one child to extend to another child living in the same home." *In re S.B.,* 2023 WL 7439265 at *3 (Nov. 9, 2023); *see also* Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) ("Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code [§ 49-1-201].").  As discussed, C.F. and T.F. were not residing in the same home.

7

This Court has held:

> For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

Syl. Pt. 8, *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022). West Virginia Code § 49-1-201 defines "abused child" as

> (1) A child whose health or welfare is being harmed or threatened by:
>
> (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;
>
> (B) Sexual abuse or sexual exploitation;
>
> (C) The sale or attempted sale of a child by a parent, guardian, or custodian in violation of § 61-2-14h of this code;
>
> (D) Domestic violence as defined in § 48-27-202 of this code; or
>
> (E) Human trafficking or attempted human trafficking, in violation of § 61-14-2 of this code.
>
> (2) A child conceived as a result of sexual assault, as that term is defined in this section, or as a result of the violation of a criminal law of another jurisdiction which has the same essential elements: Provided, That no victim of sexual assault may be determined to be an abusive parent, as that term is defined in this section, based upon being a victim of sexual assault.

8

The statute further provides that a "neglected child" is a child:

> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;
>
> (B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian; or
>
> (C) "Neglected child" does not mean a child whose education is conducted within the provisions of § 18-8-1 et seq. of this code.

W. Va. Code § 49-1-201.

In the case of *In re C.S. and B.S.,* an abuse and neglect petition was filed against the children's mother alleging that her addiction to drugs was impacting her ability to take care of them. At the time the petition was filed, C.S. was living with his mother, but B.S. was residing in another county with her legal guardians pursuant to a legal guardianship order that had been in place for five years. *Id.* at 222, 875 S.E.2d at 360. Upon review, this Court vacated the circuit court's dispositional order to the extent that it terminated the mother's parental rights to B.S., explaining that the circuit court did not have subject matter jurisdiction because

> B.S. did not qualify as either an "abused child" or a "neglected child" as those terms are defined by statute. B.S. had been living in the home of Mr. and Mrs. S. [her guardians] pursuant to a permanent legal guardianship for five years prior

9

to the filing of this abuse and neglect petition. As such, B.S.'s health and welfare were not harmed or threatened by the petitioner's drug addiction, and there is no evidence that any person inflicted abuse or neglect upon B.S. or upon another child in the home where B.S. was living. It is undisputed that Mr. and Mrs. S. are non-abusing guardians.

247 W. Va. at 224, 875 S.E.2d at 362.

Recently, in the case of *In re B.V.*, 248 W. Va. 29, 36, 886 S.E.2d 364, 371 (2023), we clarified our decision in *In re C.S and B.S.* by explaining that a circuit court is not foreclosed from "finding that a parent's conduct has threatened the child's health or welfare such that the child may properly be deemed an abused or neglected child, as that term is defined by [West Virginia Code] section 49-1-201, even though the parent does not have legal custody of their child." In other words, "*In re C.S.* [simply] stands for the proposition that a circuit court must make factual findings that said child is an 'abused child' or 'neglected child,' as defined in West Virginia Code section 49-1-201, in order to exercise jurisdiction over the child." *In re B.V.,* 248 W. Va. at 36, 886 S.E.2d at 371 (additional citation omitted). Therefore,

[t]he mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this

10

> question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.

*In re B.V.*, 248 W. Va. at 31, 886 S.E.2d at 366, syl. pt. 3.

*In re B.V.* concerned seven children, three of whom were living in the respondent parents' home at the time the alleged abuse and neglect occurred and four who resided with various relatives in legal guardianships as a result of the respondent parents' previous interactions with CPS. *Id.* at 33, 866 S.E.2d at 368. The abuse and neglect petition was predicated, in part, on disclosures regarding the respondent parents' drug use and domestic violence made by one of the children in a legal guardianship. In addition, one of the legal guardians of another child was named as an offending party for allegedly allowing unrestricted contact with the respondent parents. *Id.* at 34, 866 S.E.2d at 369. Because the circuit court's adjudicatory order failed to include any specific findings as to whether the health and welfare of these two children was threatened by the respondent parents' conduct, we vacated the adjudicatory and dispositional orders and remanded the case for further proceedings to determine whether these children, both of whom were in legal guardianships, met the definition of an abused and/or neglected child such that the circuit court could properly exercise jurisdiction. *Id.* at 40, 866 S.E.2d at 375.

In the case now before us, the abuse and neglect petition includes lengthy, detailed statements regarding acts of domestic violence committed by the petitioner and to which C.F. was exposed immediately before the filing of the petition. However, the same

11

is not true with regard to T.F. Instead, the petition only indicates that T.F. resides with his paternal grandparents under a legal guardianship order and that his parents—the petitioner and M.H.—have a CPS referral history that includes allegations of domestic violence occurring at least seven years prior to the events that led to this abuse and neglect proceeding. There are no specific allegations that T.F. was subjected to the domestic violence that occurred at the time the petition was filed, and according to the adjudicatory order, there was no evidence produced at the adjudicatory hearing concerning T.F. other than documentation of a domestic violence action involving the petitioner and M.H. in 2015, of which the circuit court took judicial notice.

As set forth above, West Virginia Code § 49-4-601 requires the circuit court to make findings of fact as to whether a child is abused or neglected and whether the parent is abusing or neglecting "based on conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." Here, the circuit court made no specific finding that T.F. was subjected to the domestic violence that occurred at the time the petition was filed. Rather, the domestic violence that is referenced with respect to T.F. is alleged to have occurred many years before the subject abuse and neglect petition was filed. That domestic violence, even if proven by clear and convincing evidence to have caused harm to T.F., does not satisfy the contemporaneous requirement set forth in West Virginia Code § 49-4-601. Therefore, we find that the circuit court clearly erred to the extent that it found T.F. to be an abused child based on evidence of domestic violence that occurred in 2015. Accordingly, we must vacate both the circuit court's adjudicatory and

12

dispositional orders as they pertain to the petitioner and T.F. As we have explained, proper adjudication is a prerequisite to disposition. "[A] circuit court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing." *In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019).

Although the record indicates that R.F. and E.F. had been T.F.'s legal guardians for approximately eight months prior to the commencement of the abuse and neglect proceeding below, it is clear that the petitioner's parents were involved in the petitioner's life such that, despite the guardianship, the petitioner may have had contact with T.F. However, the extent of the petitioner's involvement in T.F.'s life is not evident, and no findings were made below as to whether any interactions, if they did occur, threatened the health and welfare of T.F. Therefore, we find it appropriate to remand this case to the circuit court for further proceedings to determine whether T.F., although residing in a guardianship, meets the statutory definition of an abused and/or neglected child such that the court may properly exercise jurisdiction. If sufficient facts exist, amendment of the abuse and neglect petition may be necessary in order for the circuit court to make its determination. *See* Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006) ("To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations

contained in the Department of [Human Service's] petition, then pursuant to Rule 19 of the Rules of Procedure for Child Abuse and Neglect Proceedings [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.").

The petitioner next contends that the circuit court erred by terminating his parental rights rather than employing a less restrictive alternative. Notably, the petitioner does not challenge the findings the circuit court made as the basis for the termination of his parental rights. Instead, he argues that because S.H. retained her parental rights to C.F.[12] and T.F. was in a guardianship, the circuit court could have just limited his contact with the children and/or ordered supervised visitation to ensure their safety. Previously, this Court resoundingly rejected this same argument, explaining that "simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344. 540 S.E.2d 542, 561 (2000). Elaborating further, this Court observed in *In re Emily* that:

> W.Va. Code § 49-6-5 [now West Virginia Code § 49-4-604(c)6)] permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant. The circuit court is authorized,

---

[12] When the petitioner filed his brief, S.H.'s parental rights had not yet been terminated.

> [u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, [to] terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and [to] commit the child *to the permanent sole custody of the nonabusing parent, if there be one*, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

*Id.,* (additional citation omitted).

Here, the circuit court found that the conditions of abuse and neglect were not expected to improve not only because of the petitioner's incarceration, but also because of "his denial of the circumstances giving rise to the filing of the petition," which prevented the DHS from making reasonable efforts to provide remedial services. It is well-established that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable[.]" *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004) (additional citation omitted). Upon review, we find that the record supports the circuit court's decision as it shows that the petitioner

15

refused to acknowledge the abuse.  Therefore, the circuit court did not err in terminating the petitioner's parental rights to C.F.[13]

Finally, the petitioner argues that he should have been granted post-termination visitation with his children. This Court has held that,

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, in part, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).  As noted above, the circuit court determined that post-termination visitation was not in the children's best interests.  The record shows that there was no evidence of a close emotional bond between the petitioner and his children, or that continued contact would not be detrimental to the children's well-being.  Accordingly, we find no error in the circuit court's decision denying post-termination visitation as to C.F.[14]

---

[13] Our finding is limited to the circuit court's termination of the petitioner's parental rights to C.F. given that we have determined that the circuit court's decision as to T.F. must be vacated on jurisdictional grounds.

[14] *See* note 13, *supra*.

16

## IV. Conclusion

For the foregoing reasons, the circuit court's February 15, 2023, order is affirmed with respect to the termination of the petitioner's parental rights to C.F. and the denial of post-termination visitation. The order is vacated insofar as it terminates the petitioner's parental rights to T.F., and this case is remanded to the circuit court for further proceedings consistent with this opinion. The clerk is hereby instructed to issue the mandate forthwith.

Affirmed, in part; Vacated, in part; and Remanded.