**FILED**
**March 3, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **G.H.-1, J.H.-1, G.H.-2, J.H.-2, and J.W.**

**No. 25-373** (Kanawha County CC-20-2024-JA-76, CC-20-2024-JA-77, CC-20-2024-JA-78, CC-20-2024-JA-79, and CC-20-2024-JA-80)

### MEMORANDUM DECISION

Petitioner Mother C.W.[1] appeals the Circuit Court of Kanawha County's April 14, 2025, order terminating her parental rights to G.H.-1, J.H.-1, G.H.-2, J.H.-2, and J.W., arguing that the court erred in terminating her parental rights instead of imposing a less restrictive alternative and in denying her motion for post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2023, prior to the initiation of the proceedings giving rise to the instant appeal, the DHS filed an abuse and neglect petition alleging that the petitioner failed to provide the children with stable housing and was involved in an incident wherein she obstructed an officer while in a motor vehicle with J.W.'s father.[3] At the time of the incident two of the children in the vehicle were unrestrained and law enforcement discovered methamphetamine in the vehicle. The DHS also alleged that J.H.-3—the father of G.H.-1, J.H.-1, G.H.-2, and J.H.-2—failed to provide the children with stable housing. Ultimately, the circuit court terminated J.H.-3's parental rights; dismissed J.W.'s father from the proceedings; and, upon the petitioner's successful completion of her post-adjudicatory improvement period on February 1, 2024, ordered that the children be returned to her care and ordered the DHS to provide the petitioner with ninety days of follow-up services.

However, a mere eight days later, a Child Protective Services ("CPS") worker found the petitioner passed out in her bedroom with J.W.—who was less than two months old—after being

---

[1] The petitioner appears by counsel Sophia D. Mills. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Jennifer N. Taylor appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because several of the children share the same initials, we use numbers to differentiate them.

[3] J.W. was born in December 2023, during the pendency of the prior proceedings and was not a party in those proceedings.

1

let into the residence by then-three-year-old G.H.-1. The petitioner subsequently tested positive for methamphetamine and amphetamine and admitted to the CPS worker that she had relapsed. On February 28, 2024, the DHS filed the petition giving rise to the instant proceedings, alleging that the petitioner abused controlled substances and failed to adequately supervise the children.

At an adjudicatory hearing in April 2024, the petitioner stipulated to abusing methamphetamine in the children's presence and being unable to properly care for the children. The court accepted the stipulation and adjudicated the petitioner of neglecting the children. During the hearing, the petitioner represented that she had started participating in the family treatment court ("FTC") program and moved for a post-adjudicatory improvement period. The court granted the petitioner's motion and ordered the petitioner to continue with the FTC program and participate in parenting and adult life skills classes, counselling, and random drug screening. Despite evidence that the petitioner was noncompliant with the improvement period's terms, including voluntarily ceasing all participation in the FTC program and relapsing at least once, the court continued the petitioner's improvement period at a September 2024 review hearing.

In November 2024, the court granted the petitioner a six-month post-dispositional improvement period after the petitioner presented evidence that she began outpatient rehabilitation treatment at Anchor Homes, started therapy, obtained full-time employment, was attempting to acquire stable housing, and had negative drug screens. However, at a review hearing in February 2025, the court terminated the petitioner's improvement period upon evidence, including testimony from a CPS worker and the petitioner, that the petitioner ceased contact with the DHS, stopped participating in services, and had relapsed again.

The court held the dispositional hearing in March 2025. The petitioner was not present, but was represented by counsel. A CPS worker testified that, despite multiple attempts, the DHS was unable to contact the petitioner since December 2024. The CPS worker stated that the petitioner had stopped participating in her parenting and adult life skills classes, supervised visits, and drug screens around that time as well. Based upon the petitioner's lack of participation, the CPS worker asserted that termination of her parental rights was appropriate. The CPS worker also recommended prohibiting post-termination visitation due to the petitioner's history during both the prior and the instant proceedings and the worker's belief that future visits would only bring chaos and instability into the children's lives. The CPS worker acknowledged that the petitioner had not acted inappropriately during her supervised visits, but stated that the petitioner had not seen her children since she stopped participating in services in December 2024. Following this, the petitioner's counsel moved for post-termination visitation. The guardian argued against post-termination visitation, asserting that it was contrary to the children's best interests. The guardian represented that only the oldest child expressed any interest in seeing the petitioner. However, the same child had also expressed a desire to never see the petitioner again. Regarding the younger children, the guardian stated that they appeared to have forgotten the petitioner.

In the resulting dispositional order, the court found that the conduct underlying the instant proceedings occurred just eight days after the petitioner was reunified with the children following prior proceedings that also involved controlled substances. The court further found that, despite being granted multiple improvement periods, the petitioner failed to participate in or benefit from the services offered by the DHS and continued to abuse controlled substances. As such, the court

2

found that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and that the children's best interests necessitated termination. The court further found that post-termination visitation would be contrary to the children's best interests and detrimental to their well-being based on the petitioner's continued substance abuse, the petitioner's failure to maintain contact with the children, and the potential detrimental effects of any visits on the children's environments. Therefore, the court terminated the petitioner's parental rights to the children and denied the petitioner's motion for post termination visitation.[4] It is from this dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive alternative. We disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights without the use of a less restrictive alternative "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." Here, the petitioner tested positive for methamphetamine only eight days after the completion of a post-adjudicatory improvement period and the dismissal of the prior abuse and neglect proceedings, relapsed at least two times during the pendency of the underlying proceedings, and completely stopped participating in services shortly after being granted a post-dispositional improvement period. While the petitioner asserts that she "show[ed] periods of compliance and progress with services," the record shows that she had not participated in any services for three months by the time of the dispositional hearing, including supervised visits with her children. We have repeatedly highlighted that a parent's level of interest in visiting their child when outside their custody "is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Therefore, ample evidence supports the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of neglect in the near future. Additionally, the circuit court found that termination of the petitioner's parental rights was necessary for the children's welfare, which the petitioner does not challenge. Therefore, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

---

[4] The father's parental rights to G.H.-1, J.H.-1, G.H.-2, and J.H.-2 were terminated in the prior proceedings. The permanency plan for G.H.-1, J.H.-1, G.H.-2, and J.H.-2 is adoption in their current placements. The permanency plan for J.W. is reunification with her nonabusing father.

3

The petitioner also argues that the circuit court erred in denying her motion for post-termination visitation with the children. We again disagree. To receive post-termination visitation, "[t]he evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).[5] As part of this analysis, "the circuit court should consider whether a close emotional bond has been established between parent and child." *Id.* Here, the circuit court was presented with evidence that continued contact with the petitioner risked disrupting the children's environments and that the children, generally, had not expressed any desire to have contact with the petitioner. The record also shows that the petitioner was unable to remedy her substance abuse issues over a year into the proceedings and had not participated in supervised visits for three months. Further, aside from the eight-day period following the dismissal of the prior proceedings, the children had been removed from the petitioner's care for almost twenty-one consecutive months. Having weighed this evidence, the circuit court determined that post-termination visitation was not in the children's best interests and was detrimental to their well-being, and we refuse to disturb this finding on appeal. *See In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025) (Explaining, on review in an abuse and neglect appeal, that the Court does "not reweigh the evidence or make credibility determinations."); *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Accordingly, we conclude that the circuit court had sufficient evidence to find that post-termination visitation was not in the children's best interests and, therefore, did not err in denying the petitioner's motion for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 14, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[5] We apply the standards in place at the time of the entry of the circuit court's order denying post-termination visitation but note that, after its entry, this Court provisionally amended Rule 15(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to more clearly articulate and adopt appropriate standards for consideration of post-termination visitation.